State, ex rel. Spillman, v. Heldt.

---

STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, APPELLEE, V. GEORGE HELDT, APPELLANT.

FILED APRIL 12, 1927. No. 25619.

1. Injunction: MISDEMEANORS: INADEQUATE REMEDY AT LAW. While a court of equity will not ordinarily interfere by injunction to prevent acts which by statute are punishable by fine, yet when said acts are of such a nature that the public welfare is threatened and the criminal laws do not afford a complete and adequate remedy, courts of equity may, at the instance of properly constituted authorities, afford relief by injunction.

2. Statutes: ACT RELATING TO BOVINE TUBERCULOSIS: CONSTITUTIONALITY. The subject-matter of section 9, ch. 7, Laws 1925, examined in connection with the title of the act, and *held* uncon-

stitutional, as violative of that part of section 14, art. III of our Constitution, which provides: "No bill shall contain more than one subject, and the same shall be clearly expressed in the title."

3. ————: ————: ————. The subject-matter contained in section 9, ch. 7, Laws 1925, although unconstitutional, was not an inducement to the passage of the act, and the rema.ning sections thereof are *held* constitutional.

4. **Animals.** The proclamation of the secretary of the department of agriculture declaring chapter 7, Laws 1925, in operation in Saunders county, Nebraska, on and after April 20, 1925, being based on the provisions of section 9, ch. 7, Laws 1925, which we hold was unconstitutional, was a nullity, and said chapter never became operative in Saunders county.

5. ————: BOVINE TUBERCULOSIS: POWERS OF LEGISLATURE. It is within the province of the legislature in the exercise of police power to require the examination, inspection and testing of cattle for bovine tuberculosis, and if such disease is found to exist, to make provisions for the summary destruction of the diseased animals.

6. **Constitutional Law:** ACT RELATING TO BOVINE TUBERCULOSIS. In such cases, the mere fact that the legislature has made provision for but a partial indemnity to the owner for the cattle destroyed does not render the act unconstitutional, as being in conflict with the Fourteenth Amendment of the Constitution of the United States and our own Constitution.

APPEAL from the district court for Saunders county: HARRY D. LANDIS, JUDGE. *Reversed, with directions.*

*Arthur F. Mullen* and *John H. Barry,* for appellant.

*O. S. Spillman, Attorney General, Peterson & Devoe* and *E. S. Schiefelbein, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

DAY, J.

This action was brought by the state on the relation of O. S. Spillman, attorney general, against George Heldt, de-

State, ex rel. Spillman, v. Heldt.

fendant, to restrain and enjoin defendant from interfering and preventing the agents of the department of agriculture from entering upon defendant's premises, examining, and testing his cattle for bovine tuberculosis, in Saunders county, and carrying out the law of the state and the rules and regulations of the department of agriculture in reference to bovine tuberculosis eradication.

The main issues tendered by the answer may be epitomized as follows:   (1) That an injunction was not an available remedy to plaintiff, because the acts sought to be enjoined were, by the provisions of chapter 7, Laws 1925, made punishable by fine, and therefore a plain and adequate remedy at law was afforded to the plaintiff; (2) that chapter 7, Laws 1925, under which the department of agriculture was assuming to act, was never in legal force in Saunders county; (3) that said chapter is unconstitutional and void, in that it violates section 14, art. III of our Constitution; (4) that said chapter is void because it violates the Constitution of the state and the Fourteenth Amendment of the Constitution of the United States, as the enforcement of the act would unlawfully deprive the defendant of his property without due process of law.

By way of cross-petition, defendant prayed that plaintiff and the officers and employees of the state be enjoined from inspecting and administering tubercular tests to defendant's cattle in Saunders county.   Plaintiff's reply to defendant's cross-bill was a general denial.   Upon a full hearing, the trial court found in favor of the plaintiff and entered judgment as prayed in plaintiff's petition and also dismissed defendant's cross-petition.   From this judgment defendant has appealed.

Voluminous briefs have been filed in support of both sides of the controversy which have greatly assisted us in the conclusions reached, but we cannot in the space which should properly be devoted to an opinion undertake to discuss at length the various questions presented.

It is first urged by defendant that injunction is not an available remedy to the plaintiff because the state has a

plain and adequate remedy at law. It is pointed out that the act of 1925, under which the plaintiff was attempting to act makes it a criminal offense, punishable by fine, for any person to interfere with or prevent the officers of the state from administering the act. It is a general rule that, where acts complained of are in violation of the criminal law, courts of equity will not, on that ground alone, interfere by injunction to prevent their commission, as they will not exercise their power for the purpose of enforcing criminal laws, but there is a well-recognized exception to the general rule, namely, that where the acts complained of constitute a nuisance and endanger the public health and welfare, and where a more complete remedy is afforded by injunction than by criminal prosecution, a court of equity may, at the instance of properly constituted authorities, afford relief by injunction.

The general rule was applied to the facts presented in *State v. Maltby,* 108 Neb. 578, and injunction was denied. In that case, the court took notice of the well-recognized exception to the general rule, but the majority of the court was of the view that the facts in that case called for the application of the general rule, rather than the exception. Authorities are cited in the main as well as in the dissenting opinion recognizing the exception to the general rule.

Under the facts disclosed by the record, we are of the view that a criminal prosecution would not afford the public as complete and adequate relief as injunction, and that the plaintiff was well within its rights in applying to equity for relief. The public health and safety were proper elements to be considered as to whether equity would take cognizance of the case. In 32 C. J. 279, sec. 442, the rule is stated: "Where an injunction is necessary for the protection of public rights, property, or welfare, the criminality of the acts complained of does not bar the remedy by injunction." Cases are cited in support of this view. A similar rule is laid down in 14 R. C. L. 367, sec. 68, and cases cited.

It is next urged by defendant that chapter 7, Laws 1925,

under which the department of agriculture and its employees were assuming to inspect and test defendant's cattle never became operative in Saunders county, and therefore the officers were not authorized by law to do the acts they were attempting to do. A determination of the question presented by this objection involves an examination of certain provisions of the act, as well as the title, in connection with section 14, art. III of our Constitution. Upon the point under consideration, defendant argues that section 9 of the act, under which, it is claimed by the state, the act became operative, is unconstitutional, and that therefore the attempted acts of the officers were unauthorized. The title of the act in question is as follows:

"An act to provide for the inspection, examination, and testing of cattle for tuberculosis and to establish an area plan for such inspection, examination, and testing within this state by the department of agriculture, when a request has been made therefor by sixty per cent. of the owners representing fifty-one per cent. of the breeding cattle; and to provide for indemnity on cattle condemned and destroyed by order of the department of agriculture on account of tuberculosis; and to repeal chapter 11, Laws of Nebraska for 1923; and to declare an emergency."

Section 1 of the act, much abbreviated, provides in substance that, whenever a petition signed by 60 per cent. of the owners representing 51 per cent. of the breeding cattle, as disclosed by the last assessment rolls of the several testing districts, who reside in any county, shall be presented to the department of agriculture, asking that all breeding cattle herds within the county be tested for tuberculosis, the department is authorized to make such tests. This section further provides that upon the filing of such petition the secretary of the department of agriculture shall fix a time for hearing before him, giving notice and an opportunity for objections to be filed, and if upon such hearing the secretary of the department is satisfied that the requirements of the law have been complied with, he shall declare such county an area for inspection, examination

and testing of breeding cattle therein for tuberculosis. The secretary is also required to publish a notice in some newspaper of general circulation in the county fixing, the time when such tests will begin. Section 9 of the act provides in substance that, where the area plan of tuberculosis eradication has been adopted in this state prior to the enactment of this act, such work may be continued by the department of agriculture in each of said counties under the provisions of this act without further petition by the owners of breeding cattle, provided that 60 per cent. or more of the herds of breeding cattle of such county have been tested or that the petition submitted be signed by 60 per cent. or more of the owners of breeding cattle. The act was passed with an emergency clause and was approved March 31, 1925. It will be observed, however, that the law did not become operative in the several counties of the state by the mere fact of its passage. Outside of section 9, the act is founded upon the theory that, before the law should become effective, petitions are to be circulated and presented to the department of agriculture, an order issued declaring the county to be under the area plan, and from then the work is to be carried on as outlined in the act. It will be noticed that, by the provisions of section 9, the act becomes effective without a petition, notice, and hearing, when the area plan has been previously adopted in the state, provided 60 per cent. or more of the herds of breeding cattle in the county have been tested, or that a petition be submitted, signed by 60 per cent. or more of the owners of breeding cattle.

Acting under the provisions of section 9, the department of agriculture issued an order April 20, 1925, declaring the act to be in force and effect on and after that date. No claim is made that the provisions of section 1 of the act were complied with.

Is the subject-matter contained in section 9 within the title of the act? Section 14, art III of our Constitution, provides: "No bill shall contain more than one subject, and the same shall be clearly expressed in the title." The

title of the act, among other things, provides for the inspection, examination and testing of cattle for tuberculosis and to establish an area plan for such inspection, examination and testing within the state by the department of agriculture, when a request has been made therefor by 60 per cent. of the owners representing 51 per cent. of the breeding cattle, etc. There is no suggestion in this title that the area plan of inspection is to be in force in any other way than upon the petition of 60 per cent. of the cattle owners representing 51 per cent. of the breeding cattle, whereas under the provisions of section 9, in counties where the area plan has been adopted prior to the passage of the present act, no petition is required, as provided for in section 1, before the act becomes operative. Section 9 provides an entirely different method and different conditions under which the act may be effective. Any one reading the title, especially that portion indicating that the act becomes effective when a request therefor has been made by 60 per cent. of the owners representing 51 per cent. of the breeding cattle, would not be apprised of the fact that the act might be effective in any other manner. Had the title to the act omitted the clause, "when a request has been made therefor by 60 per cent. of the owners of the breeding cattle," it is possible that upon a fair interpretation of the title it would be broad enough to include the subject-matter contained in section 9 of the act; but, with the clause included beginning with the word "when," the effect is to limit the scope of the title, rather than to enlarge it, and to carry the idea that it became effective only in that manner.

A reading of the entire act in connection with the title leads one to believe that the subject-matter of section 9 is an afterthought, and not germane to the title or the leading thought running through the remainder of the act. We are quite convinced that the provisions of section 9 are not included in the title and are contrary to section 14, art. III of our Constitution. We are of the view, however, that section 9 was not an inducement to the passage of the act. Without section 9, the act is complete and enforceable and

within the fair limits of its title. We hold that section 9 is unconstitutional, but that the remainder of the act is legal and enforceable. If we are correct in our conclusion with respect to section 9, it follows that the act of 1925 was never in force in Saunders county, because the proclamation by the secretary of the department of agriculture was based solely upon the provisions of section 9.

It is also urged that the act in question is null and void because it provides for the destruction of cattle found to be infected with tuberculosis without compensation to the owner. It is argued that the act is in conflict, not only with our own Constitution, but with the Fourteenth Amendment of the Constitution of the United States. The act provides that, when any bovine animal is certified to be tuberculous by the department of agriculture, such animal shall be branded, quarantined and slaughtered and the owner reimbursed according to the provisions of a schedule which, in the main, provides for the payment by the state of not more than $15 for any grade animal nor more than $30 for any pure bred animal. Provision is made for the appraisal of the amount, and the payment of one-third of the difference between the appraised value and the value of the net salvage received by the owner from the slaughter of such animal. There are other provisions on the subject which provide that, when the owner does not receive compensation from the federal government for such animals, the owner may receive double the amount of indemnity from the state. It seems to be conceded, however, that these provisions contemplate but partial compensation to the owner for the animals destroyed.

The validity of statutes similar to our own have frequently been considered by the courts and in the main they have been sustained upon the theory that such enactments are a proper exercise of the police power of the state. In a recent case, *Fevold v. Board of Supervisors*, 202 Ia. 1019, a similar question to the one now before us was discussed, and it was held that neither the Fourteenth Amendment of the Constitution of the United States nor any other amend-

ment was designed to interfere with the police power of the state to prescribe regulations to promote health, peace, morals, education, and good order of the people; that in the exercise of a reasonable discretion it was within the power of the legislature to determine what measures should be taken, to the end that cattle be tested for tuberculosis in the interest of public health. In that case the general subject is discussed and numerous authorities cited in support of the general rule. In *Durand v. Dyson,* 271 Ill. 382, it is said: "Prevention of the spreading of dangerous diseases among cattle is now universally recognized in this country as within the domain of the police power, as it is so essential to the public safety and health." In *Lawton v. Steele,* 152 U. S. 133, in discussing the general subject of police power, the court said: "It is universally conceded to include everything essential to the public safety, health, and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance. Under this power it has been held that the state may order * * * the slaughter of diseased cattle." In *Houston v. State,* 98 Wis. 481, it is said: "It is fairly established, by adjudications too numerous to mention, that a state may, in the proper exercise of its police power, authorize the destruction of such property as has become a public nuisance, or has an unlawful existence, or is noxious to the public health, public morals, or public safety, without compensation, notwithstanding the prohibition in section 1, art. XIV of the amendments of the Constitution of the United States." See, also, *Schulte v. Fitch,* 162 Minn. 184; *Richter v. State,* 16 Wyo. 437; *Barbier v. Connolly,* 113 U. S. 27; *Jacobson v. Massachusetts,* 197 U. S. 11.

Cases supporting the doctrine that cattle suffering from contagious or infectious disease may be destroyed by the state under the police power of the state, without compensation to the owner, may be found in 3 C. J. 54, sec. 151; 1 R. C. L. 1158, sec. 102. That bovine tuberculosis is dangerous to the human family is fully sustained by expert testimony and warrants the legislature in enacting laws to

suppress it under the police power of the state. The scientific testimony pertaining to the tests adopted in determining whether an animal is infected with bovine tuberculosis, while not infallible, is, we think, sufficiently correct to warrant the legislature in adopting such method as a test.

Other questions are presented in the brief of the defendant, which we have considered, but which we do not regard as controlling in the case, and a discussion of them is omitted. Upon a review of the evidence, in the light of the authorities, we are firmly convinced that the act in question, except in the particulars heretofore pointed out, is not in conflict with our Constitution or the Constitution of the United States. It follows from what has been said that this act never became operative in Saunders county, and that the judgment of the district court in granting the injunction to the plaintiff was erroneous. The law never having been properly in force in Saunders county, the defendant was entitled to an injunction on his cross-petition against the state and its officers from entering upon his premises and attempting to test his cattle under the provisions of the act.

The judgment of the district court is reversed and the cause remanded, with directions to enter judgment conforming to this opinion.

REVERSED.