THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. CHRIS TEUSCHER, Appellant.

Constitutional law — Farms and Markets Law — cattle — quarantine — statute providing for quarantine of herd of cattle untested for tuberculosis, where ninety per cent of herds in town have been tested, valid — no arbitrary preference of localities or persons — no improper classification — no denial of equal protection of laws nor unlawful delegation of legislative power — action may be maintained by People to recover penalties for violation and to restrain violation in future of order of quarantine.

1. Section 76 of the Farms and Markets Law (Cons. Laws, ch. 69; amd. L. 1924, ch. 267), providing that " Whenever ninety per centum of the herds of cattle in any town have been subjected to the tuberculin test * * * and the owner of any untested herd in such town refuses or neglects to have his herd tuberculin tested, then the commissioner may order the premises or farm on which such untested herd is harbored to be put in quarantine," is valid.

2. A contention that the standard to be applied in ordering a quarantine involves an arbitrary preference of some localities and persons to the detriment of others, and a classification, unrelated, in any reasonable degree, to the mischief to be remedied, cannot be sustained. A class may lawfully be restricted if the lines defining the restriction are not arbitrary altogether and the rule to be applied within them is uniform and even. The plan of the statute, making the township the territorial unit in the war upon unhealthy cattle, cannot, therefore, be condemned where experience has shown that the most effective method of attack is by division into units, established, not merely by coercion, but with the willing co-operation of the persons most affected.

3. Nor may the statute be successfully attacked upon the ground that there is a denial of the equal protection of the laws, if not an unlawful delegation of legislative power, when the voluntary use of

a test by a prescribed percentage of the owners in a township is made a standard of conduct to which others must conform, though owners in other townships, where there is a different percentage of opposition, are free from such restraints. A command thus conditioned is neither a denial of equal laws nor an illegitimate delegation of legislative power. It is the adaptation of the rule, according to the judgment of the vicinage, to the occasion and the need. The local mind can best discern the local needs and interests, and it was within the power of the Legislature to say that where ninety per cent of owners of cattle in a town have resorted to the test, the other ten per cent must conform or submit to quarantine.

4. An action may be successfully maintained, therefore, by the People of the State, to recover penalties from one who violated an order of quarantine made in accordance with the provisions of the statute and to restrain the violation of such order hereafter.

*People* v. *Teuscher*, 222 App. Div. 791, affirmed.

(Argued June 21, 1928; decided July 19, 1928.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 4, 1928, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term, a jury having been waived.

*W. R. Pratt* for appellant. The quarantine provisions of section 76 of the Farms and Markets Law so far as applicable hereto are not within the police powers of the State of New York and are in violation of the Constitution of the State of New York. (*Ives* v. *South Buffalo Ry. Co.*, 201 N. Y. 279; *People* v. *Ringe*, 110 N. Y. Supp. 74; *People* v. *Orange Co. Rd. Constr. Co.*, 175 N. Y. 84; *People* v. *Mitz*, 193 N. Y. 159; *People* v. *Coler*, 166 N. Y. 144; *People* v. *Grout*, 179 N. Y. 417; *Barbier* v. *Connolly*, 113 U. S. 27; *Soon Hing* v. *Crowley*, 113 U. S. 703; *Hatch* v. *Reardon*, 184 N. Y. 431; *People* v. *Ericson*, 147 N. Y. Supp. 226.) The imposition of a penalty in this case is void and unconstitutional as imposing a penalty where no law has been violated. (*Ives* v. *South Buffalo Ry. Co.*, 201 N. Y. 271; *Mannix* v. *Frost*, 164 N. Y. Supp. 1050; *People ex rel. Ogden* v. *McGowan*, 195 N. Y. Supp. 286.) The summary quar-

antine of the defendant's herd and produce, without investigation, notice or cause, deprived the defendant of liberty and property without due process of law. (*People v. Jenkins*, 202 N. Y. 53; *People v. Wilson*, 166 N. Y. Supp. 211; *Matter of Smith*, 146 N. Y. 68.)

*Albert Ottinger*, Attorney-General (*George L. Flanders* and *Almon W. Burrell* of counsel), for respondent. The statute in question is a health statute and is enacted for the purpose of preventing the spread of communicable diseases and is a matter of public interest. (*Abounader v. Strohmeyer & Arpe Co.*, 243 N. Y. 458; *Durand v. Dyson*, 271 Ill. 382.) Section 76 of the Farms and Markets Law, and the power to issue quarantine as therein provided, is within the police power of the State and is constitutional. (*Matter of Viermaster*, 179 N. Y. 235; *Musco v. United Surety Co.*, 196 N. Y. 459; *Holden v. Hardy*, 169 U. S. 366; *Lawton v. Steele*, 152 U. S. 133; *Barbier v, Connolly*, 113 U. S. 27; *Adams v. City of Milwaukee*, 144 Wis. 371; *Durand v. Dyson*, 271 Ill. 382; *Biddles, Inc., v. Enright*, 239 N. Y. 354; *Richter v. State*, 16 Wyo. 437; *City of New Orleans v. Charouleau*, 121 La. 890; *Hawkins v. Hoye*, 108 Miss. 282.) The statute properly directs the imposition of a penalty for the acts committed by the defendant in removing his milk from the farm quarantine. (*Lawton v. Steele*, 152 U. S. 133; *Holden v. Hardy*, 169 U. S. 366.)

CARDOZO, Ch. J. The action is by the People of the State against a farmer and dairyman in the township of Rome, Oneida county, to recover penalties for the violation of an order made in 1925 by the Commissioner of Farms and Markets in accordance with the provisions of the Farms and Markets (now the Agriculture and Markets) Law (Cons. Laws, ch. 69), and to restrain the violation of such order hereafter.

The defense is that the order is illegal and void.

Section 76 of the Farms and Markets Law as it stood before its amendment in 1924 (L. 1924, ch. 267) provided as follows:

" The commissioner may order any animal or animals affected with communicable disease or which have been exposed to a communicable disease or which he believes to be suffering from or exposed to a dangerous communicable disease, to be put in quarantine and may order any premises or farm where such disease exists or shall have recently existed to be put in quarantine, so that no domestic animal be removed from or brought to the premises quarantined; and shall prescribe such regulations affecting animals, persons or property as he may deem necessary or expedient to prevent the dissemination of the disease from the premises so quarantined."

This section was amended in 1924 by adding thereto the following:

" Whenever ninety per centum of the herds of cattle in any town have been subjected to the tuberculin test for the purpose of ridding such herds of the disease known as tuberculosis, and the owner of any untested herd in such town refuses or neglects to have his herd tuberculin tested, then the commissioner may order the premises or farm on which such untested herd is harbored to be put in quarantine, so that no domestic animal shall be removed from or brought to the premises quarantined, and so that no products of the domestic animals on the premises so quarantined shall be removed from the said premises " (Since amended by L. 1926, ch. 84; L. 1927, ch. 214).

Discovery of tuberculosis in cattle is made in two ways: *First*, by physical examination, *i. e.*, inspection by sight and touch, an imperfect and uncertain method; and *second*, by the so-called tuberculin test, or tests similar thereto. Physical examination is compulsory whenever ordered by the Commissioner (§ 78). The tuberculin test requires the co-operation of the owners (§ 79).

Section 78 provides that the Commissioner may cause

a physical examination of dairy cows whose milk is marketed in liquid form or otherwise to be made at any time. " If, from such examination, an animal be deemed by the commissioner to be infected with tuberculosis " it " shall be immediately removed from the herd, slaughtered or disposed of as the commissioner may prescribe."

Section 79 provides that " the owner of a herd of cattle kept for dairy or breeding purposes * * * may apply to the commissioner for examination of his herd by the tuberculin, or other approved tests," subject, however, to prescribed regulations. One of these is to the effect that the Commissioner may cause any animal responding to the test to be slaughtered or held in strict quarantine. Another is to the effect that if diseased cattle are found, the owner shall agree " to follow directions of the commissioner designed to prevent the reinfection of the herd and to suppress the disease and prevent the spread thereof."

Ninety per cent of the herds of cattle in the township of Rome, Oneida county, were subjected to the tuberculin test at the request of their owners. There is evidence that of 3,500 cattle tested, 1,600 were condemned as tubercular and slaughtered. The defendant, the owner in that township of a herd of twelve cows, refused to permit the test to be applied to his herd. Thereupon the Commissioner, acting under section 76 of the statute, made an order, dated November 10, 1925, that the defendant's " premises or farm on which said untested herd is harbored or kept be * * * placed in quarantine; " " that no bovine animal shall be removed from or brought to said premises," and " that no products of the bovine animals on said premises shall be removed from said premises," the order to take effect immediately.

The defendant contests the validity of the order and refuses to obey it. He has violated its commands by removing his milk from the farm and selling it to the

milk-gathering stations at Marcy and Oriskany, New York. He assails the statute back of the order as an unconstitutional interference with liberty and property, and a denial to him and others of the equal protection of the laws. The standard to be applied in ordering a quarantine involves, in his view, an arbitrary preference of some localities and persons to the detriment of others. The classification, he says, is unrelated in any reasonable degree to the mischief to be remedied (*Power Co.* v. *Saunders*, 274 U. S. 490, 493; *Quaker City Cab Co.* v. *Comm. of Penn.*, 277 U. S. ——). His challenge was promptly met. Section 40 of the statute provides for a penalty of $200, and section 38 for an injunction. In an action brought by the Commissioner under the authority of those sections, there has been a judgment for the plaintiff, which on appeal to the Appellate Division has been unanimously affirmed.

We find no arbitrary preference of localities or persons, no classification unrelated to the mischief to be remedied.

The plan of the statute is to make the township the territorial unit in the war upon unhealthy cattle. More will be accomplished, it has been thought, by attacking the units severally than by going against all together (*Miller* v. *Strahl*, 239 U. S. 426, 434; *Northwestern Laundry* v. *City of Des Moines*, 239 U. S. 486, 495). No doubt there are gaps and leaks in any scheme of subdivision. Milk from the herds in the tested town of Rome will be rid of the infection, but milk may be brought from untested towns nearby, and sold even in Rome without offense against the statute. This is far from saying that the purification of the source of supply in a given territorial unit is not a public good. At least the local herds will be sound, and buyers from that source of supply will have a certificate of safety. A class may lawfully be restricted if the lines defining the restriction are not arbitrary altogether and the rule to be applied within them is uniform and even. *Adams* v. *City of Milwaukee* (228

U. S. 572) supplies a helpful precedent. A city ordinance forbade the sale of milk from cows outside the city unless the tuberculin test had been applied before the sale. The ordinance was allowed to stand though cows within the city were subject to a different rule. Legislation is not void because it hits the evil that is uppermost. Equally it is not void because it hits the evil that is nearest. There would be paralysis in a different rule. A statute prescribes the quality of food produced within a State. It does not become invalid for failing at the same time to provide a method of maintaining equal quality in respect of food imported. As well might we say that every local ordinance is void because by the conditions of its existence it is a rule for a locality. The war upon disease would be even harder than it is if nothing short of extermination could render it legitimate.

Enlightening is the course of legislation in States other than our own. There as here experience has shown that the most effective method of attack is by division into units, established, not merely by coercion, but with the willing co-operation of the persons most affected. A system known as the " county area plan " and the " county area accredited plan " has found a place upon the statute books with the approval of the courts. Thus, in Iowa, an act was passed in 1923, whereby the county area plan was to be established by the State Commission whenever there was submitted a petition signed by fifty-one per cent of the owners of breeding cattle within a county that the county be thereafter enrolled upon that basis. Provision was then to be made for the testing of the cattle by owners signing the petition or other appropriate agreements. In 1924 this statute was amended so as to compel submission by unwilling owners. Whenever seventy-five per cent of the owners of breeding cattle in any county operating under " the county area plan " signed agreements to that effect, the county was to be enrolled by the department under the " accredited

area plan." Thereafter " every owner of breeding cattle within the county shall cause his cattle to be tested, and shall comply with all the requirements for the establishment and maintenance of a tuberculosis-free accredited herd." These statutes were upheld by the Supreme Court of Iowa (*Lausen* v. *Bd. of Supervisors*, 214 N. W. Rep. 682; *Fevold* v. *Bd. of Supervisors*, 210 N. W. Rep. 139). The power of the State was broadly asserted to create such agencies and establish such subdivisions as it chose in its war upon disease. A county area plan, adopted upon like petition by a stated percentage of the owners, has been adopted in Minnesota (L. 1923, ch. 269), and sustained by its courts (*Schulte* v. *Fitch*, 162 Minn. 184), and adopted also in Nebraska, and there again sustained (*State ex rel. Spillman* v. *Heldt*, 213 N. W. Rep. 578). Laws to the same effect will be found in many other States (See, *e. g.*, New Jersey [a petition by 90%], L. 1927, ch. 91, §§ 4, 5, 6; Vermont [90%], L. 1927, No. 12; Mass. [85%], L. 1927, ch. 335; California, Bovine Tuberculosis Law, L. 1927, ch. 47, § 10; Illinois, L. 1925, p. 2; § 75, Ill. Rev. Stat.; Idaho, L. 1923, ch. 146; L. 1927, ch. 56; Indiana, L. 1925, p. 605; § 3764, Annotated Statutes; Missouri, L. 1925, p. 103; § 12101A, Rev. Laws; Wisconsin, L. 1925, ch. 392; ch. 94.07 Wisconsin Statutes; Washington, L. 1927, ch. VI, § 3110; Connecticut, L. 1927, ch. 188; Ohio, General Code, § 1121; Tennessee, L. 1927, ch. 46, § 6). " Legislation so general marks a rising tide of opinion which is suggestive and informing " (*Roman* v. *Lobe*, 243 N. Y. 51, 55). An evil prevalent far and wide has evoked far and wide the reaction of a like response.

The size of the unit is not, however, the sole basis of the attack upon the statute. Attack is also made upon the standard of selection to be applied within the unit. The principle of local co-operation — a principle shared by this statute with those in other States — involves, it is said, a false basis of division. There is a denial, in this view, of the equal protection of the laws if not an

unlawful delegation of legislative power, when the voluntary use of a test by a prescribed percentage of the owners in a township is made a standard of conduct to which others must conform, though owners in other townships, where there is a different percentage of opposition, are free from such restraints. Again there is significance in practice and decision. If the Legislatures in so many States have " deemed it wise to invite and secure voluntary local co-operation " before applying a plan " to a given area " (*Schulte* v. *Fitch, supra*), we may suspect that in a choice so general there is something more substantial than a vagary of the will.

The local mind can best discern in these things as in many others the local needs and interests (*Adams* v. *City of Milwaukee, supra,* at p. 583; *Ohio ex rel. Clarke* v. *Deckebach,* 274 U. S. 392, 397). The Legislature might have said that every farmer in every township must submit his cattle to the test (*Durand* v. *Dyson,* 271 Ill. 382; *City of New Orleans* v. *Charouleau,* 121 La. 890; *State* v. *Heldt, supra*). It chose to adopt a rule less general and oppressive. Whether there was need for the test at any given time and place could not be known in advance. The need might vary from year to year within the same local subdivision, and even in the same year between one division and another. Inspectors in the State service could not be sure, however diligent their inspection, for physical examination by the sense of sight or touch is a fallible and deceptive guide. The safest thing was to leave the choice to the enlightened self-interest of those within the industry. They would inspect their own herds, not intermittently and casually, but with the solicitude of ownership. Better than mere officials, they would know what should be done. Some protection, however, there would have to be against dissent within the group, the factious opposition of an intransigent minority. The test of a herd would go for naught, the danger of

infection would be as great almost as before, so long as another herd, untested, was harbored on a neighbor's farm. The statute does not say that even then a mere majority of owners may impose their will on the minority. Not till ninety per cent have united in resorting to the test does it say that the other ten per cent must conform, or else submit to a quarantine that will keep their cattle off the market. Pressure so effective is equivalent to a command to yield.

A command thus conditioned is neither a denial of equal laws (*Adams* v. *City of Milwaukee, supra,* at p. 581), nor an illegitimate delegation of legislative power (*People ex rel. Unger* v. *Kennedy,* 207 N. Y. 533). It is the adaptation of the rule, according to the judgment of the vicinage, to the occasion and the need. Small use would there be in stimulating the many within a township to a care of the public health, if one or a few wiseacres or obstructionists could make the labor vain. More and more, in its social engineering, the law is looking to co-operative effort by those within an industry as a force for social good. It is harnessing the power that is latent within groups as it is harnessing the power in wind and fall and stream. Conspicuously is it doing this in its dealings with agricultural producers, spread often over wide areas, and thus deficient in cohesion, but yielding up new energies when functioning together. We see this in the very statutes, already quoted, with their attempt to check tuberculosis by co-operative effort. We see it in the co-operative marketing associations which have made such headway of recent years in this State and many others, associations with privileges and powers peculiar to themselves (*Liberty Warehouse Co.* v. *Burley Tobacco Growers Co-op. Marketing Assn.,* 276 U. S. 71; cf. Co-op. Corporations Law, L. 1926, ch. 231, § 119, Consol. Laws, ch. 77). A different question would be here if the majority within a group could impose its will on a minority for the advancement of its own welfare, unrelated

to the public good. Such a case was *Eubank* v. *City of Richmond* (226 U. S. 137), where two-thirds of the owners on a city block were at liberty for their own convenience to compel the other third to set the houses back. Here the good to be attained is not selfish merely or personal to those whose cattle have been tested. There is benefit to them, but also something more. Bound up with their protection is the advancement of a public good, the preservation of the public health (*Booth* v. *State of Indiana*, 237 U. S. 391, 398; *Miller* v. *Schoene*, 276 U. S. 272).

Ninety per cent of the cattle owners in the township of Rome have said by their acts that the test rejected by the defendant is useful and desirable. Legislation in this State and elsewhere has confirmed their judgment. Acts of Congress have done the same (See *e. g.*, Mason's Fed. Code, art. 21, §§ 111, 123). The defendant holds out, and says the test is worthless. The Constitution does not protect him in this assertion of his own will against a judgment so preponderant (*Matter of Viemeister*, 179 N. Y. 235).

Other objections have been considered, and have been found to be untenable. The statute makes provision for compensation when tuberculous animals are slaughtered by order of the Commissioner or his deputies. It would not be invalid if compensation were withheld (*Adams* v. *City of Milwaukee, supra; State* v. *Heldt, supra; People* v. *Cipperly*, 101 N. Y. 634; *Jacobson* v. *Massachusetts*, 197 U. S. 11; *Miller* v. *Schoene, supra*).

The judgment should be affirmed with costs.

POUND, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur; CRANE, J., not sitting.

Judgment affirmed.