THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* RAYMOND B. RYAN, Respondent.

Fourth Department, July 1, 1930.

*Hamilton Ward, Attorney-General [George L. Flanders, Louis B. Shay* and *Samuel H. King* of counsel], for the appellant.

*Nicholas G. Powers,* for the respondent.

EDGCOMB, J. This action is brought to recover the penalty imposed by section 41 of the Agriculture and Markets Law (as amd. by Laws of 1926, chap. 55) of the State of New York, for the alleged violation by defendant of the provisions of section 70 of the same act (as amd. by Laws of 1928, chap. 51).

Section 70, so far as it relates to the case here under discussion, reads as follows: " No person shall hereafter without the consent of the owner use, * * * any milk * * * bottle, * * * having the name or initials of the owner stamped, marked or fastened on such * * * bottle."

Section 41 makes a violation of any of the provisions of the act, or of any other law the enforcement of which is within the jurisdiction of the Department of Agriculture and Markets, or of any lawful rule of the Department, a misdemeanor, and provides that, upon conviction, the guilty party shall be punished by a fine of not less than twenty-five nor more than two hundred dollars, or by

imprisonment for not less than one nor more than six months, or by both such fine and imprisonment, for the first offense; and by imprisonment for not more than one year for the second offense.

Section 44 of the same law provides as follows: " Whenever the commissioner shall know or have reason to believe that any penalty has been incurred by any person for a violation of any of the provisions of this chapter, or of any other law the enforcement of which is within the jurisdiction of the department, or of the rules of the department, or that any sum has been forfeited by reason of any such violation, the commissioner may report the facts to the attorney-general who may cause an action or proceeding to be brought in the name of the people for the recovery of the same."

The complaint was dismissed at the opening of the trial. Defendant's motion for such dismissal, as well as the decision of the court, was put upon the sole ground that the act under which this action is brought is violative of the provisions of both the Federal and State Constitutions. As the sufficiency of the complaint was not otherwise challenged, we may confine ourselves at this time to a discussion of the constitutionality of the statute.

In approaching this decision, it must be borne in mind that a conflict between a statute and the Constitution must be plain and unmistakable to warrant the court in declaring an act unconstitutional. Every presumption is in favor of the validity of a legislative enactment. If a reasonable doubt exists, the statute should be upheld. (*City of Buffalo* v. *Hawks,* 226 App. Div. 480, 485; affd., 251 N. Y. 588; *People ex rel. Carter* v. *Rice,* 135 id. 473, 484; *People* v. *Budd,* 117 id. 1, 29; *People ex rel. City of Rochester* v. *Briggs,* 50 id. 553; *Whitney* v. *California,* 274 U. S. 357, 371; *Ogden* v. *Saunders,* 12 Wheat. 213, 270.)

So long as a statute does not infringe any provision of the Constitution, the court is not concerned with its wisdom, desirability or necessity. The framers of our government saw fit to give all legislative power to the Legislature. That body is primarily the judge of the regulations required by the public need. If their work does not meet the demands or wishes of the public, there is an adequate remedy in the hands of the people. The courts must turn a deaf ear to complaints against legislation, unless it is forbidden by the fundamental law of the land.

The suggestion that this statute makes the purchaser of milk delivered in a bottle which is marked with the name of the dealer guilty of a misdemeanor and liable to a penalty, if he takes the bottle into his house and permits the milk to remain in the container until used, would put an unreasonable construction on the statute. The consumer purchases the milk, and not the bottle. If the dealer

delivers the milk which he sells in the bottle of another and on which the name of the owner is stamped, he uses the bottle and violates the statute. The consumer, by simply accepting the milk in the bottle, and later, when empty, giving it back to the dealer, does not use the bottle so as to make him liable to a penalty. (*People v. Cannon*, 139 N. Y. 32.) If there is any doubt as to the meaning of the statute, it should be given such construction as will, if possible, make it conform to the requirements of the Constitution. (*Fox v. Washington*, 236 U. S. 273; *United States v. Delaware & Hudson Co.*, 213 id. 366, 407.)

We fail to see how it can be said that this provision deprives any one of his property without due process of law, or that it is discriminatory, arbitrary or unreasonable.

Without doubt, one of the aims of this statute was to put an end to the promiscuous appropriation by bootleg milk dealers of bottles which did not belong to them, by means of which practice they were able to save the expense of purchasing an adequate supply of their own. We can see no constitutional objection to an act which tends to protect an owner in the possession and use of his own property, and which prohibits another from taking and using the same without the owner's consent. If that were the only purpose of the statute, we fail to see how it could be attacked upon constitutional grounds.

We think, however, that the Legislature had another purpose in mind when it enacted this statute, and that it sought to protect the interests and welfare of the community by safeguarding the public health. If the act tends in that direction, it should be upheld, even if it disturbs the enjoyment by one of some individual right. (*People v. Bowen*, 182 N. Y. 10; *People v. Girard*, 145 id. 105; *Health Department v. Rector, etc.*, Id. 32; *City of Brooklyn v. Nassau El. R. R. Co.*, 44 App. Div. 462; *People v. Koster*, 121 id. 852.)

The State owes a duty to its citizens to protect their life, safety and health, and that undefinable, inherent something, called police power, has been given to the sovereign State for that very purpose. It corresponds to the right of self-preservation in the individual. (*Commonwealth v. Vrooman*, 164 Penn. St. 306, 316; *People v. Brazee*, 183 Mich. 259, 262; *City of Chicago v. Gunning System*, 214 Ill. 628.)

Speaking of the police power of the State, it was said by POUND, J., in *People v. Perretta* (253 N. Y. 305, at p. 309): "The police power is 'the least limitable of the powers of government.' (*District of Columbia v. Brooke*, 214 U. S. 138, 149.) It extends to all the great public needs. (*Camfield v. United States*, 167 U. S. 518.) The validity of police regulations must depend on the circumstances

of each case and the character of the regulation, whether arbitrary or reasonable. A legitimate public purpose may always be served without regard to the constitutional limitations of due process and equal protection. [*People ex rel. Durham Realty Co.* v. *LaFetra,* 230 N. Y. 429; *Bryant* v. *Zimmerman,* 278 U. S. 63.] The Legislature has a wide discretion in protecting the public from the dishonest or irresponsible. (*Roman* v. *Lobe,* 243 N. Y. 51; *People* v. *Teuscher,* 248 N. Y. 454.) The question is how to apply the test."

In determining whether a statute which has been passed in the exercise of police power is constitutional or not, the court is limited to looking into its enactment just far enough to see if it is adapted in any way to bring about the desired end. If so, the act must be upheld. (*People* v. *Griswold,* 213 N. Y. 92, 97.)

We think that this statute tends not only to prevent fraud and deception, but to promote the health and welfare of the public. Milk in varying quantities forms a part of the food of the great majority of individuals. It is the exclusive diet of practically every baby. Impure milk is the breeder of many serious diseases. I know of nothing which is of more vital importance to the life and health of young children than a pure and wholesome supply of milk. For years the Legislature has constantly attempted to safeguard its supply by statute, and to prevent, so far as possible, its contamination. Any act looking to that end, or which tends to inform the consuming public of the character of the article they are using, cannot be said to be beyond the police power of the State. Article 4 of the Agriculture and Markets Law (as amd.), which includes sections 46 to 71, inclusive, relates to dairy products, and is replete with safeguards thrown around the care and feed of cows, the preservation and sale of milk, etc. Standards and regulations are prescribed under which our dairy products must be produced. These are deemed necessary not only for the protection of the health of the consumer, but also for the protection of the honest producer. People have become educated to the necessity of pure foods. The authorities are numerous upholding the constitutionality of statutes tending to keep the supply of milk and other articles of food pure and wholesome, and to prevent the public from being deceived and imposed upon by the sale of some substitute or adulterated product. (*People* v. *Teuscher,* 248 N. Y. 454; *People* v. *Bowen,* 182 id. 1; *People* v. *Girard,* 145 id. 105; *People* v. *Kibler,* 106 id. 321; *Abounader* v. *Strohmeyer & Arpe Co.,* 243 id. 458; *People* v. *Koster,* 121 App. Div. 852.)

The milk of one producer is many times cleaner and more wholesome than that of another. If milk is put in a container which has not been properly cleansed or sterilized, its value as a food

product has been lessened, and it may affect the health of those who consume it. If all sellers of milk would keep their cans and bottles clean and wholesome, there would be no need of many of these regulations on the part of the State. Some are much more particular than others. The public is entitled to know, when it buys milk in a bottle marked with some particular dealer's name, that it is getting that dealer's product. To be sure, an owner might, unbeknown to the public, consent to the use of his bottles by another, and the consumer might then be deceived as to whose milk he was buying. Still consumers would have the assurance that an owner would not be apt to permit the use of his bottles by one who was not trustworthy. The danger of being held liable for some damage which might result from the consumption of impure milk, upon the theory that the milk was the product of the one whose name was stamped on the container, would serve to make an owner very careful to whom he loaned his bottles.

For these reasons, I think it may be said that this statute tends to prevent fraud being practiced on the public, and serves to promote the health and well-being of the citizens of the State. Its enactment is, therefore, justified by the inherent power of the State to legislate for the health, safety and welfare of the community.

Statutes strikingly similar to the one here under consideration were held to be constitutional in *People* v. *Cannon* (139 N. Y. 32) and *Monroe Dairy Association* v. *Stanley* (65 Hun, 163). In the former case, chapter 377 of the Laws of 1887, commonly known as the "Bottling Act," was attacked because of its alleged unconstitutionality. That statute made it unlawful for any person, without the written consent of the owner, to fill with mineral water, milk, cream, beer or other beverage, any bottle marked or stamped with the name or brand of any person or corporation engaged in the manufacture or sale of such beverages, if a description of such name or brand had been filed and published as therein specified, and made one violating such provision guilty of a misdemeanor. The court said: "A bottle that has been marked as described in the first section, and has thereafter been used by the owner of the marks for the purpose of identifying in the market the particular goods manufactured by him and put up in such bottles, ought not to be used for other purposes against the will of the manufacturer, so long as he has not sold the bottles to anyone, nor authorized anyone to use or traffic in them." In the latter case, chapter 401 of the Laws of 1887, entitled "An Act in relation to milk cans," as amended by chapter 25 of the Laws of 1890, was before the

court for consideration. That statute made it unlawful for any person, without the consent of the agent of the owner or shipper, to use, sell or traffic in any milk can belonging to any dealer which had the name or initials of the owner stamped or marked thereon, and made one who violated such provision liable for a penalty. The court said (at p. 165) that there was no " force in the constitutional objections raised by the defendant against the statute."

Defendant's objection to the validity of the act because of the method prescribed for enforcing obedience to the mandate of the statute, is unavailing. As before noted, section 41 makes a violation of the statute a misdemeanor, and subjects the offender to a fine or imprisonment, while section 39 makes him liable to a penalty, to be recovered in a civil action brought as prescribed in section 44. Defendant cannot complain because he is not called upon to answer to a criminal charge.

The rule is well settled that the State may impose fines and penalties for a violation of its statutory requirements, and that the Legislature may prescribe the manner in which they shall be enforced, whether at the suit of a private party, or of the public. (*People* v. *Teuscher*, 248 N. Y. 454; *Missouri Pacific R. Co.* v. *Humes*, 115 U. S. 512.)

The fact that section 44, above quoted, permits rather than commands the Attorney-General to commence an action against the offender to recover the penalty prescribed by the act, if the Commissioner of Agriculture and Markets reports to · him the facts relating to such violation, and leaves it to the discretion of the Commissioner whether such report shall ever be made, does not lay the act open to the claim that it is discriminatory, or an improper delegation of legislative power, and, therefore, unconstitutional. The statute does not give to any individual an exclusive privilege or immunity. As was said by MILLER, J., in *People* v. *Griswold* (*supra*): " In determining whether statutory requirements are arbitrary, unreasonable·or discriminatory, it must be borne in mind that the choice of measures is for the Legislature, who are presumed to have investigated the subject, and to have acted with reason, not from caprice."

In *People* v. *Teuscher* (*supra*), section 76 of the Farm and Markets Law, giving to the Commissioner power to quarantine a farm if the owner refused to have his cattle tuberculin tested, was held constitutional, notwithstanding the fact that the act made it discretionary rather than mandatory on the part of the Commissioner to order the quarantine.

The law·assumes that a public officer will do his duty, and not abuse any discretion which has been accorded him.

Defendant urges that the office of Commissioner of Agriculture and Markets is an unlawful one, and, therefore, no proper report of a violation by defendant of section 70 of the act has ever been made, without which no authority for the commencement of this action exists. We do not deem it necessary to enter into any extended discussion of this objection, other than to say that, in our opinion, it is ill-founded, and that the Commissioner of Agriculture and Markets holds his office legally. The office of Commissioner of Agriculture and Markets is a continuation of the old office of Dairy Commissioner, which was created by chapter 202 of the Laws of 1884. The office has remained the same since 1884, with the same and enlarged powers, although it has gone under different names. The Constitution of 1846 (Art. X, § 2), which was in effect at the time the office of Dairy Commissioner was created, provided that any new office thereafter created should be filled in such manner as the Legislature should direct. The mode of appointment of the Dairy Commissioner, therefore, rested with the Legislature. (*People* v. *Draper*, 15 N. Y. 532.) The same provision is found in *hæc verba* in our present Constitution. (Art. X, § 2.) An office which was new under the Constitution of 1846 continues to be a new one under the Constitution of 1894. (*Matter of Allison* v. *Welde*, 172 N. Y. 421, 432.)

We think that the Legislature had authority to fix the method which was followed in this case in the appointment of the Commissioner, and that, when the present incumbent reported to the Attorney-General the violation by defendant of the provisions of section 70 of the chapter in question, it was the act of a duly constituted official. At any rate, the person who made such report was in fact acting as Commissioner, and had been for sometime, and his authority so to do had never been questioned.

We have reached the conclusion that the act under which this action is brought is constitutional, and that the learned court below erred in dismissing the complaint.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and THOMPSON, JJ.

Judgment reversed on the law and a new trial granted, without costs of this appeal to either party.