Belknap,
April 7, 1936.

FLORENCE M. DEDERICK *v.* ROBERT W. SMITH.

64

*Florence M. Dederick, pro se* (by brief and orally).

*Thomas P. Cheney, Attorney-General,* and *Dudley W. Orr, Assistant Attorney-General (Mr. Orr* orally), for the defendant.

BRANCH, J.   The defendant broke and entered the plaintiff's barn and applied the tuberculin test to her cattle without her consent and despite her positive objections.   Her assertion that the defendant "did not have authority" to do these acts "without judicial authorization" raises, first, a question as to the scope and effect of the statutes here involved.

Chapter 187 of the Public Laws embodies a comprehensive program for the control and eradication of contagious and infectious diseases of domestic animals.   Section 29 of that chapter provides that the commissioner of agriculture "shall cause systematic investigation ... to be made as to the existence of pleuro-pneumonia ... or any other infectious or contagious disease among cattle ... and all other domestic animals, and he, or his duly authorized agent, may enter any premises, including stock yards, within any part of the state, in or at which he has reason to believe that there exists or may exist any such disease, and make search, investigation, and inquiry in regard to the existence thereof."   Although tuberculosis is not mentioned by name in this section, it was obviously included within the description of "any other infectious ... disease."   If doubt were possible upon this point it must be removed when it is observed that many subsequent sections of the same chapter deal specifically with examinations for tuberculosis, the use of the tuberculin test and the disposition of animals found to be diseased.   P. L., c. 187, ss. 42-82. The purpose of these provisions is accurately indicated by the finding of the court that "the use of the tuberculin test is an essential part of a coordinated national program for the eradication of bovine tuberculosis."

Section 46 of the same chapter, as amended by Laws of 1931, c. 22, s. 1, authorizes the commissioner of agriculture to "declare any town or county a quarantine area" and to "test all animals within

said area." The court has found that in accordance with these enactments Grafton County, where the alleged trespasses were committed, "had been duly declared a quarantine area for the purpose of applying the tuberculin test." For the purposes of enforcing the provisions of this act, the state veterinarian is the duly authorized agent of the commissioner. *Ib.*, *s.* 6. Section 83 of the same chapter makes it a criminal offence to interfere with or hinder the "work of the commissioner or his agents."

The net result of the foregoing provisions is that the state veterinarian has authority to test for tuberculosis all cattle within a duly established quarantine area. For that purpose he is authorized to enter "any premises" where cattle are kept, and since cattle are usually kept in barns, it follows that he is clothed with authority to enter such buildings in the performance of this duty.

The contention of the plaintiff that the statute does not authorize an entry without the supplementary aid of judicial process in the nature of a search warrant is without merit. On the contrary, the act was apparently designed to dispense with the necessity of judicial process in its enforcement. The statute, in effect, gives to the named officers a blanket search warrant which permits them to investigate all premises where cattle are kept. To the validity of this warrant the consent of the owner is not necessary and authority to use such force as may be necessary to effect an entrance to buildings which have been locked for the purpose of preventing an investigation, is necessarily implied.

The specific claim of the plaintiff that before such entry she "was entitled to a hearing as to whether or not the keeping by her of cattle that had not been tested for tuberculosis came within the provisions of P. L., *chap.* 187, *sec.* 46, as amended, and was within the police power of the state," finds no support in the provisions of the statute or the established procedure in regard to the issuance of search warrants. P. L., *c.* 365, *ss.* 1-3. Since the law contemplates the testing of all cattle within a quarantine area, no question of fact as to whether the plaintiff's cattle were subject to test could arise. We, therefore, conclude that the acts of which the plaintiff complains and against a repetition of which she seeks an injunction, were authorized by the statute, and unless the statute is, for some reason, invalid, the petition must be dismissed.

In her brief the plaintiff states that she "bases her appeal upon three grounds:

"I. The breaking and entering cannot be justified in any manner,

because they violate the rights in property secured to an individual by the Constitution of New Hampshire.

"II. Her property was injured without due process of law.

"III. Chapter 46 of the Public Laws of New Hampshire, as amended by Chapter 22 of the Public Acts, Joint Resolutions of the Legislature of 1931, is unconstitutional for it is an arbitrary and unreasonable exercise of the police power of the state."

Logically the last of these propositions should be considered first, for unless the statute can be defended as a valid exercise of the police power of the state, its unconstitutionality upon both of the other grounds suggested above would be clear. We, therefore, take up first the question whether the enactments here involved can be sustained under the police power.

In regard to the purpose of the law there can be no doubt but that the control of infectious diseases of domestic animals is a subject within the scope of the police power of the state. The supreme court of the United States has repeatedly recognized and declared that this is so. *Hannibal &c. R. R. Co.* v. *Husen,* 95 U. S. 465; *Missouri &c. Ry. Co.* v. *Haber,* 169 U. S. 613; *Smith* v. *Railroad,* 181 U. S. 248; *Reid* v. *Colorado,* 187 U. S. 137; *Asbell* v. *Kansas,* 209 U. S. 251. Numerous decisions of the state courts to the same effect are collected in the note to *McSween* v. *State Board,* (97 Fla. 750) in 65 A. L. R. 508, 528. The subject is clearly within the broad scope of the police power as here understood. "The police power of the state extends to the protection of the lives, health, comfort, and quiet of all persons and the protection of all property within the state; and persons and property are subjected to such restraints and burdens as are reasonably necessary to secure the general comfort, health and prosperity." *State* v. *White,* 64 N. H. 48, 50; *Canaan* v. *District,* 74 N. H. 517, 544.

Definite authority to legislate with reference to this matter is to be found in the language of the constitution, which confers upon the legislature "full power and authority . . . to make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, ordinances, directions, and instructions . . . as they may judge for the benefit and welfare of this state, and for the governing and ordering thereof, and of the subjects of the same." Const. of N. H., Part II., *art.* 5.

Since the police power may properly be invoked for the purpose of controlling infectious diseases of live stock, a statute enacted to that end is to be sustained unless its provisions are found to be in-

consistent with other constitutional limitations. The fact that the operation of such a statute involves some restriction upon the rights guaranteed to individuals by the bill of rights, is not in itself fatal. Some such interference with individual rights is usually unavoidable, and "when the people gave the legislature power to make such reasonable and wholesome laws as it thinks will promote the public welfare, they necessarily gave it power to impose such reasonable and wholesome restrictions on the rights secured to individuals by the bill of rights as it thinks will be for the best interests of the community, notwithstanding such restrictions were unknown to the common law as it was understood in 1783," when the constitution was adopted. *Carter* v. *Craig*, 77 N. H. 200, 204.

It is, therefore, established law in this jurisdiction that when the police power of the state is invoked by the legislature in the enactment of a statute for a proper purpose, such a statute will not be declared unconstitutional merely because it restricts some of the rights secured to individuals by the fundamental law. It will be declared invalid only when the restrictions thus imposed are found to be unreasonable. *Woolf* v. *Fuller*, 87 N. H. 64, 68; *Carter* v. *Craig, supra,* 543; *State* v. *Normand*, 76 N. H. 541.

In passing upon the issue of reasonableness, the importance of the public benefit which the legislation seeks to promote is to be balanced against the seriousness of the restriction of private right sought to be imposed. If a statute is directed to a public interest of minor importance and yet imposes serious restriction upon guaranteed rights, the conclusion that it is unreasonable may be required. *Woolf* v. *Fuller*, 87 N. H. 64. A situation of that description was presented in the case of *Carter* v. *Colby*, 71 N. H. 230. Where the public benefit proposed is important, however, and the interferences with private rights is slight, the statute is to be sustained.

With respect to the importance of the public benefit which the statute here in question seeks to accomplish, the finding of the court that "bovine tuberculosis is communicable from diseased cattle to human beings," is significant. For this reason, the eradication of this disease may be regarded as highly important for the preservation of the public health. Upon this ground, measures designed to suppress it may be more easily defended than those directed against pests and diseases which injure only the animals affected thereby and which are, therefore, justifiable only upon economic grounds. Measures for the eradication of such evils as ticks and sheep scab have been uniformly upheld as constitutional and it would seem to

follow, *a fortiori*, that a statute designed to suppress a disease communicable to human beings must be upheld. The case of *McSween* v. *State Board, supra,* involves a statute relating to tick eradication. For a case sustaining a statute designed to control sheep scab, see *North &c. Co.* v. *Woodland,* 12 Ida. 50.

It further appears that the control of bovine tuberculosis is regarded as a problem of national concern and that the federal government is coöperating with the states in a "coordinated national program for ... [its] eradication." Under these circumstances, it cannot be doubted that the importance of public benefit which the statute is designed to promote justifies the use of strong measures for its accomplishment.

By contrast with the importance of the state's undertaking, the necessary interference with individual property rights is slight. The tuberculin test which, in quarantine areas, is made by the state without expense to the owner, consists of the injection of a minute quantity of tuberculin "not over one minim, even one-half drop" between the layers of the skin at the base of an animal's tail and an examination three days later to observe its effect. The court found that this test "is not harmful either to animals or human beings." This finding was fully sustained by the evidence and the plaintiff's exception thereto is overruled.

The suggestion of the plaintiff at the trial that the result of such a test was "to poison the food of my family" cannot be seriously entertained and contrasts strangely with her denial that "milk is infectious from tubercular cows." The twin assertions that half a drop of tuberculin, which contains no living organisms, under the tail of a cow poisons her milk, while an infection by living tubercle bacilli does not affect it, typifies the inconsistencies into which an opinionator may be betrayed by his dogmatic beliefs.

It cannot be said that the legislative program for the establishment of quarantine areas and the testing of all cattle within such areas, is unreasonable. "More will be accomplished, it has been thought, by attacking the units severally than by going against all together," (*People* v. *Teuscher,* 248 N. Y. 454) and the practical operation of the law has demonstrated the soundness of this opinion. The court finds that the established method "has resulted in a very substantial reduction in the prevalence of bovine tuberculosis among the domestic animals of New Hampshire." Such has also been the policy adopted in many other states where "experience has shown that the most effective method of attack is by division into units, established,

not merely by coercion, but with the willing co-operation of the persons most affected. A system known as the 'county area plan' and the 'county area accredited plan' has found a place upon the statute books with the approval of the courts" in many other jurisdictions. *People* v. *Teuscher, supra.* For a collection of statutes framed upon this theory, see the opinion in the case last cited.

In order to make sure that all cattle within a quarantine area shall be tested, some provision for examination, inspection and compulsory testing of cattle belonging to owners who will not act voluntarily, is obviously essential, and the provision of the statute which authorizes the commissioner of agriculture to enter "any premises . . . within any part of the state, in or at which he has reason to believe there exists or may exist any such disease, and make search, investigation, and inquiry in regard to the existence thereof" is reasonably calculated to effectuate the purpose of the law without imposing any substantial hardship upon individuals.

We, therefore, conclude the provisions of the statute here involved which give to the commissioner of agriculture, and to the defendant as his duly authorized agent, authority to establish quarantine areas; to test all cattle within such areas, and, for the purpose of enforcing the law, to enter any "premises" where cattle are kept, are not in themselves unreasonable, and do not involve any unreasonable interference with private rights. The statute is, therefore, unobjectionable as an exercise of the police power of the state.

The foregoing conclusions dictate the answer to the plaintiff's second contention, namely, that "her property was injured without due process of law." The substance of her position upon this point is stated in her brief as follows: "Even if it were a lawful exercise of the police power of the state to authorize the testing of cattle against an owner's wishes, it is clear that there is a proper method to carry out such a mandate of the Legislature. The right of an owner of property to have a notice and opportunity of hearing in which he may urge his rights, is fundamental." This argument obviously rests upon the assumption that the fourteenth amendment to the constitution of the United States constitutes a limitation upon the police power of the states. This is not the law. That amendment "was not designed to interfere with the exercise of the police power of the states for the protection of the lives, liberty, and property of its citizens or for the promotion of the public safety, peace and order. *State* v. *Stevens,* 78 N. H. 268, 272, 273; *Giozza* v. *Tiernan,* 148 U. S. 657, 662; *Barbier* v. *Connolly,* 113 U. S. 27, 31; *In re*

*Kemmler*, 136 U. S. 436, 449; *Mugler* v. *Kansas*, 123 U. S. 623, 662-665. The fourteenth amendment did not abridge the right of protection inherent in the states and reserved when the constitution was adopted." *State* v. *Rheaume*, 80 N. H. 319, 322.

"Neither the Amendment, broad and comprehensive as it is, nor any other amendment was designed to interfere with the power of the State, sometimes termed its 'police power,' to prescribe regulations to promote the health, peace, morals, education and good order of the people, and to legislate so as to increase the industries of the State, develop its resources and add to its wealth and prosperity." *Barbier* v. *Connolly*, *supra*, 31.

"It cannot be supposed that the States intended, by adopting that amendment, to impose restraints upon the exercise of their powers for the protection of the safety, health, or morals of the community." *Mugler* v. *Kansas*, *supra*. To the same effect are the later cases in the supreme court, *Reinman* v. *Little Rock*, 237 U. S. 171; *Terrace* v. *Thompson*, 263 U. S. 197; *Miller* v. *Schoene*, 276 U. S. 272.

The contention of the plaintiff that she had a constitutional right to notice and an opportunity to be heard before a judicial tribunal before her cattle could lawfully be tested without her consent is, therefore, without foundation. Statutes providing for the summary destruction, by administrative officers, of diseased animals and other property kept or used in violation of law are not unconstitutional. *Kroplin* v. *Truax*, 119 Oh. St. 610, and cases cited; *Lawton* v. *Steele*, 152 U. S. 133.

The contention of the plaintiff that the breaking and entering of her barn constituted a violation of the right secured to her by *article* 12 of the bill of rights, to be protected in the enjoyment of her property, is equally without foundation. The answer to this contention has been indicated above. Her unlawful conduct in interfering with and hindering the defendant in the discharge of his duty created the necessity for the breaking of which she complains. Under the guise of enjoying her property, she cannot successfully defy duly enacted commands of the legislature. If the defendant's acts were authorized by a constitutional statute, her constitutional rights have not been infringed.

The statute explicitly gave to the defendant, as the lawful agent of the commissioner of agriculture, specific authority to enter the plaintiff's "premises" for the purpose of investigating the existence of infectious disease amongst her cattle. As above stated, we think that this necessarily included authority to break into any barn from

which the plaintiff undertook to exclude him or his agent. This is in accordance with the general rule in such cases which has been stated as follows: "One who is privileged to enter land" pursuant to legislative duty or authority "is further privileged to break and enter a fence or other enclosure or a dwelling or other building if to do so is reasonably necessary or is reasonably believed by the actor to be necessary to accomplish the purpose of the privilege." 1 Am. Law Inst. Restatement of Torts, s. 213. With the possible exception of dwelling houses, in regard to which we express no opinion, we believe that this is an accurate statement of the law.

The final argument urged with much earnestness by the plaintiff is that the testing of her cows "consisted in the practice of medicine by the appellee"; "that it is a well established principle in law that no form of medical treatment may be practiced without consent"; and that "the tuberculin test is State medicine, and there is no constitutional provision for practicing state medicine in either the state or Federal constitutions."

We need not be detained by the question whether the testing of the plaintiff's cows involved the practice of medicine, although the plaintiff's assertion was denied by the defendant's expert witnesses who took the position that tuberculin is merely a "diagnostic agent" with no curative properties and hence that its administration involved merely a test to determine whether disease was present and not the administration of medicine for its cure. If it be assumed that the conduct of the defendant involved the practice of medicine, we know of no constitutional provision which forbids a state to authorize the compulsory medical treatment of animals. It is unnecessary for us to decide at this time whether a statute requiring medical treatment to be given to human beings would be valid, since the arguments against such laws invoke a different constitutional right from any here involved, namely, the right to personal liberty. The only rights of the plaintiff which have been affected in any way are property rights and, as indicated above, we do not find that they have been unreasonably invaded.

Consistent with the conclusions above reached are a large number of cases in other jurisdictions in which the constitutionality of laws of various types relating to the testing of cattle for tuberculosis have been sustained, of which the following may be cited as examples: *People* v. *Teuscher*, 248 N. Y. 454; *Adams* v. *Milwaukee*, 144 Wis. 371; s. c. 228 U. S. 572; *Kroplin* v. *Truax*, 119 Oh. St. 610; *Hacker* v. *Barnes*, 166 Wash. 558; *Nelson* v. *Minneapolis*, 112 Minn. 16; *New*

*Orleans* v. *Charouleau,* 121 La. 890; *Peverill* v. *Black Hawk County,* 201 Ia. 1050; *State* v. *Heldt,* 115 Neb. 435. See also the case of *Miller* v. *Schoene,* 276 U. S. 272, s. c. 146 Va. 175, in which a statute requiring the destruction of red cedar trees in order to eradicate a disease known as cedar rust upon apple trees was sustained in accordance with the principles above set forth.

As a result of the foregoing discussion it follows that the action of the trial court in dismissing the plaintiff's bill was correct, and the order here must be

*Exceptions overruled.*

All concurred.