## V. CONCLUSION

For the reasons discussed, we affirm the judgment of the district court in all respects.

AFFIRMED.

––––––––––––––

ConAgra Foods, Inc., APPELLANT, v.
Ryan J. Zimmerman, APPELLEE.
___ N.W.2d ___

Filed May 9, 2014.    No. S-13-375.

1. **Injunction: Equity: Appeal and Error.** An action for injunction sounds in equity. On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court.

2. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

3. **Evidence.** Determining the relevancy of evidence is a matter entrusted to the discretion of the trial court.

4. **Trial: Evidence: Appeal and Error.** An erroneous exclusion of evidence is reversible only if the complaining litigant was prejudiced by the exclusion of such evidence.

5. **Injunction: Equity.** An injunction lies in equity.

6. **Equity.** Equity is not a rigid concept, and its principles are not applied in a vacuum.

7. **____.** Equity is determined on a case-by-case basis when justice and fairness so require.

8. **Injunction.** An injunction is an extraordinary remedy, and it ordinarily should not be granted unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice.

9. **Injunction: Trespass.** An injunction against trespassing will be granted where the nature and frequency of trespasses are such as to prevent or threaten the substantial enjoyment of the rights of possession and property in land.

10. **Injunction: Proof.** The party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle him or her to relief.

11. **Criminal Law.** As a general rule, the prosecution of criminal offenses is normally a complete and sufficient remedy at law.

12. **Criminal Law: Injunction: Equity.** Where acts complained of are in violation of the criminal law, courts of equity will not, on that ground alone, interfere by

injunction to prevent their commission, as they will not exercise their power for the purpose of enforcing criminal laws.

13. ____: ____: ____. A court of equity may properly afford injunctive relief where there has been a continuing and flagrant course of violations of the law, even though these acts may be subject to criminal prosecution.

14. **Evidence: Words and Phrases.** Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

15. **Evidence: Proof.** For evidence to be relevant, all that must be established is a rational, probative connection, however slight, between the offered evidence and a fact of consequence.

Appeal from the District Court for Douglas County: James T. Gleason, Judge. Reversed and remanded with directions.

Heidi A. Guttau-Fox and Christopher R. Hedican, of Baird Holm, L.L.P., for appellant.

Michael J. Wilson, of Schaefer Shapiro, L.L.P., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, and Cassel, JJ.

McCormack, J.
### NATURE OF CASE
ConAgra Foods, Inc. (ConAgra), appeals the district court's denial of injunctive relief. ConAgra argues that the violent nature of Ryan J. Zimmerman's alleged trespass warrants injunctive relief enjoining Zimmerman from having any contact with ConAgra and its employees and restraining him from ConAgra property.

### BACKGROUND
At approximately 5 a.m. on November 10, 2012, a white male drove a vehicle onto ConAgra's main campus in downtown Omaha, Nebraska. The man fired a gun five times at two window washers working on ConAgra property and then drove away.

On November 13, 2012, police arrested Zimmerman for the incident. The two window washers reviewed the photographs from television news reports and the Omaha World-Herald newspaper and positively identified Zimmerman

as the shooter. Zimmerman's estranged wife is a manager at ConAgra.

On November 15, 2012, ConAgra filed its complaint seeking a temporary restraining order, a preliminary injunction, and a 1-year permanent injunction enjoining Zimmerman from having any contact with ConAgra. ConAgra also served a "bar and ban" letter upon Zimmerman.

The district court entered a temporary restraining order. Zimmerman answered the complaint, and a hearing was held on ConAgra's request for permanent injunction.

At the hearing, ConAgra offered 21 exhibits. Exhibits 1 through 6 consisted of three petitions/affidavits for protection orders filed by Zimmerman's estranged wife and the three protection orders granted by the district court. Exhibits 7 and 11 through 14 are printouts containing Zimmerman's criminal history which were obtained from "JUSTICE," Nebraska's online trial court case management system. The exhibits also show that Zimmerman had posted bond for the charges associated with the alleged shooting. The district court sustained Zimmerman's relevancy objections on all of these exhibits.

Exhibit 8 is the "bar and ban" letter sent to Zimmerman by ConAgra. Exhibits 17 and 18 are the affidavits of the window washers, identifying Zimmerman as the shooter. Exhibit 19 is the affidavit from ConAgra security, and exhibit 21 is the complaint filed in this action. Each of these exhibits was admitted.

On April 1, 2013, the district court dissolved the temporary injunction and denied ConAgra's request for a permanent injunction. The district court relied on *Cox v. Sheen*[1] for the proposition that a single trespass does not give rise to injunctive relief. ConAgra appealed, and we moved the case to our docket.[2]

## ASSIGNMENTS OF ERROR

ConAgra assigns that the district court erred in (1) sustaining Zimmerman's relevancy objections to exhibits 1 through 6

---

[1] *Cox v. Sheen*, 82 Neb. 472, 118 N.W. 125 (1908).

[2] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

and 11 through 14, (2) holding that Zimmerman's trespass was insufficient for injunctive relief, and (3) denying the permanent injunction.

## STANDARD OF REVIEW

[1] An action for injunction sounds in equity. On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court.[3]

[2-4] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[4] Determining the relevancy of evidence is a matter entrusted to the discretion of the trial court.[5] An erroneous exclusion of evidence is reversible only if the complaining litigant was prejudiced by the exclusion of such evidence.[6]

## ANALYSIS

The issue presented by this appeal is whether ConAgra met its burden in establishing that Zimmerman is likely to trespass again and that the existing remedies at law are inadequate to remedy such a trespass. After reviewing the record, the uncontroverted facts sufficiently demonstrate that Zimmerman will again trespass in flagrant violation of criminal law upon ConAgra's property. Therefore, justice requires a 1-year permanent junction.

[5-7] An injunction lies in equity.[7] Equity is not a rigid concept, and its principles are not applied in a vacuum.[8] Rather,

---

[3] *State ex rel. City of Alma v. Furnas Cty. Farms*, 266 Neb. 558, 667 N.W.2d 512 (2003).

[4] *State v. Ely*, 287 Neb. 147, 841 N.W.2d 216 (2014).

[5] *Id*.

[6] *Sturzenegger v. Father Flanagan's Boys' Home*, 276 Neb. 327, 754 N.W.2d 406 (2008).

[7] See *Lambert v. Holmberg*, 271 Neb. 443, 712 N.W.2d 268 (2006).

[8] *Id*.

equity is determined on a case-by-case basis when justice and fairness so require.[9]

[8-10] An injunction is an extraordinary remedy, and it ordinarily should not be granted unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice.[10] An injunction against trespassing will be granted where the nature and frequency of trespasses are such as to prevent or threaten the substantial enjoyment of the rights of possession and property in land.[11] The party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle him or her to relief.[12]

[11-13] As a general rule, the prosecution of criminal offenses is normally a complete and sufficient remedy at law.[13] We have stated that where acts complained of are in violation of the criminal law, courts of equity will not, on that ground alone, interfere by injunction to prevent their commission, as they will not exercise their power for the purpose of enforcing criminal laws.[14] However, a court of equity may properly afford injunctive relief where there has been a continuing and flagrant course of violations of the law, even though these acts may be subject to criminal prosecution.[15] For instance, we have upheld injunctive relief against a husband and wife who operated a private home school in continuing and flagrant violation of the State Department of Education's rules and regulations and Nebraska statutes.[16]

In cases involving serious violence, other courts have granted an injunction if there is a risk that the serious violent

---

[9] *Id.*

[10] See *id.*

[11] See *id.*

[12] *Riha v. FirsTier Bank*, 248 Neb. 785, 539 N.W.2d 632 (1995).

[13] See *City of New York v. Andrews*, 186 Misc. 2d 533, 719 N.Y.S.2d 442 (2000).

[14] See *State, ex rel. Spillman, v. Heldt*, 115 Neb. 435, 213 N.W. 578 (1927).

[15] *State ex rel. Douglas v. Wiener*, 220 Neb. 502, 370 N.W.2d 720 (1985).

[16] *Id.*

act will be repeated again. For example, in *Emma Goldman Clinic v. Holman*,[17] injunctive relief was granted against a protestor who had undertaken aggressive demonstrations for more than a year outside of a clinic that performed abortions and who made threatening comments in a local newspaper. The court held that the plaintiffs lacked an adequate remedy to prevent the protestor from harming the clinic and its staff. The court thus placed restrictions on the protestor's actions to help prevent such harm. And in *State ex rel. Dobbs v. Burche*,[18] injunctive relief was granted after a landlord had raped one female tenant and had repeatedly harassed others. These cases, along with our precedent, indicate that an injunction can be granted, even when the criminal law is implicated, if the trespass is likely to be repeated in flagrant violation of the criminal law.

[14,15] But before addressing whether Zimmerman is likely to trespass again, we must determine whether the district court abused its discretion in sustaining Zimmerman's relevancy objections to exhibits 1 through 6 and 11 through 14. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.[19] For evidence to be relevant, all that must be established is a rational, probative connection, however slight, between the offered evidence and a fact of consequence.[20]

We find the excluded exhibits to be relevant evidence. Exhibits 1 through 6 and exhibit 11 demonstrate that Zimmerman's wife has had protection orders against him. The evidence establishes that Zimmerman's estranged wife works at ConAgra and that Zimmerman has previously harassed her. Therefore, the exhibits provide the relevant evidence

---

[17] *Emma Goldman Clinic v. Holman*, No. 05-2097, 2006 WL 3436221 (Iowa App. Nov. 30, 2006) (unpublished disposition listed in table of "Decisions Without Published Opinions" at 728 N.W.2d 60 (Iowa App. 2006)).

[18] *State ex rel. Dobbs v. Burche*, 729 N.W.2d 431 (Iowa 2007).

[19] *Karel v. Nebraska Health Sys.*, 274 Neb. 175, 738 N.W.2d 831 (2007).

[20] *Id*.

of why Zimmerman may trespass again. Exhibit 12 is a JUSTICE report which demonstrated that Zimmerman was out on bond at the time of the hearing. Its relevance is obvious—if Zimmerman was held in jail for the shooting, he could not possibly trespass while incarcerated. Exhibit 13, another JUSTICE report, shows the charges Zimmerman faced from this incident. And finally, exhibit 14 is a JUSTICE report which shows that Zimmerman had a pending stalking charge at the time of the hearing, for which he had pled not guilty. Exhibits 13 and 14 provide a relevant connection between the past actions of Zimmerman and the likelihood he will trespass again, while also demonstrating his flagrant disregard for the criminal law.

After reviewing all of the relevant exhibits, we find that ConAgra established by a preponderance of the evidence every controverted fact necessary to entitle it to injunctive relief. The preponderance of the evidence established that ConAgra has a clear right to exclude Zimmerman from its private property, and Zimmerman provided no evidence to the contrary. The record also established that the damage could be irreparable should another similar trespass occur. And finally, the preponderance of the evidence established that the current remedies at law are inadequate to prevent a failure of justice because, despite possible criminal sanctions, all of the admitted evidence indicates that it is more likely than not that the trespass will be repeated. It is uncontroverted that Zimmerman fired his gun on ConAgra property. It is uncontroverted that his estranged wife works at ConAgra and that she had previously requested and received protection orders against Zimmerman. The record demonstrates that Zimmerman flagrantly violated at least one of his estranged wife's protection orders when he entered onto her work premises at ConAgra on November 10, 2012. After being arrested for the shooting, Zimmerman was released on bail and was thus capable of trespassing again.

This evidence supported ConAgra's argument that Zimmerman will again trespass on ConAgra property to harass and possibly harm his estranged wife, which could result in irreparable damage to ConAgra property and its

employees. Through his deplorable actions, Zimmerman has demonstrated that he is willing to flagrantly violate the criminal laws of this state in order to trespass upon ConAgra property. Although Zimmerman's prior criminal actions raise real doubts on the efficacy of a permanent injunction preventing Zimmerman from again trespassing onto ConAgra property, we do not feel comfortable standing by idly when justice calls for action. Therefore, we reverse the district court's order and remand the cause with directions to grant a 1-year permanent injunction.

## CONCLUSION

For the reasons discussed, we hold that the district court erred in denying injunctive relief to ConAgra. We remand with directions, consistent with this opinion, to enter a 1-year permanent injunction against Zimmerman.

REVERSED AND REMANDED WITH DIRECTIONS.

MILLER-LERMAN, J., not participating.

CASSEL, J., dissenting.

ConAgra's request for a 1-year injunction was prompted by a single event of trespass including criminal behavior. The majority now permits ConAgra to judicially obtain a special, extraordinary remedy denied to it by the Legislature. Further, equity has long denied injunctive relief for single instances of trespass or completed, past acts. And for over 100 years, this court has held that equity will not enjoin actions constituting criminal offenses. The majority departs from this long-established precedent without explaining a principled distinction between this case and the hundreds, if not thousands, of instances annually involving assaultive or violent behavior. I respectfully dissent.

The majority concludes that the uncontroverted facts sufficiently demonstrate that Zimmerman will again trespass upon ConAgra's property. This conclusion overstates the record. The record contains no evidence indicating that Zimmerman's trespass was anything more than a single incident of violence. There is no evidence that Zimmerman had ever undertaken similar acts in the past or threatened ConAgra with future harm. While the record establishes that Zimmerman's wife had made

allegations of harassment in the past and that Zimmerman had a pending stalking charge against him, such evidence provides no basis on which to conclude that Zimmerman posed a threat of future harm to ConAgra.

This court has consistently stated that when simple acts of trespass are involved, equity generally will not act.[1] Rather, an injunction will be granted where the nature and frequency of trespasses are such as to prevent or threaten the substantial enjoyment of the rights of possession and property in land.[2] In trespass cases, equity looks to the nature of the injury inflicted, together with the fact of its constant repetition, or continuation, rather than to the magnitude of the damage inflicted, as the ground of affording relief.[3] Thus, in *Whipps Land & Cattle Co. v. Level 3 Communications*,[4] this court affirmed the denial of injunctive relief, because the record provided no basis on which to conclude that future trespasses might occur. In *Whipps Land & Cattle Co.*, the plaintiff failed to articulate a reason why similar trespasses would occur in the future, but instead relied upon the absence of any reason to believe they would *not* occur. In other words, much like the instant case, the plaintiff was speculating on the prospect of future harm. This was not sufficient, according to the *Whipps Land & Cattle Co.* court, to warrant the extraordinary remedy of injunctive relief.[5]

ConAgra is requesting this court to speculate that future trespasses may occur merely because Zimmerman's estranged wife still works at ConAgra. But an injunction should be granted in only the clearest of cases.[6] Mere speculation that a future trespass may occur is insufficient to meet this standard.

---

[1] See, e.g., *Lambert v. Holmberg*, 271 Neb. 443, 712 N.W.2d 268 (2006); *Whipps Land & Cattle Co. v. Level 3 Communications*, 265 Neb. 472, 658 N.W.2d 258 (2003); *Thomas v. Weller*, 204 Neb. 298, 281 N.W.2d 790 (1979).

[2] See *Lambert, supra* note 1.

[3] *Id.*

[4] *Whipps Land & Cattle Co., supra* note 1.

[5] *Id.*

[6] See *Lambert, supra* note 1.

Zimmerman's behavior, though thoroughly deplorable, comprised only a single event, and ConAgra failed to prove that the act will be repeated.

Additionally, this court has described the purpose of an injunction as the restraint of actions which have not yet been taken.[7] Remedy by injunction is generally preventative, prohibitory, or protective, and equity will not usually issue an injunction when the act complained of has been committed and the injury has been done.[8] The purpose of an injunction is not to afford a remedy for what is past but to prevent future mischief.[9] Rights already lost and wrongs already perpetrated cannot be corrected by an injunction.[10] Zimmerman's trespass, albeit violent, is a completed, past act. And the record contains no evidence to support the majority's conclusion that future trespasses are likely. Thus, the majority contravenes our well-established precedent that an injunction is an inappropriate remedy for a completed, past act.

Moreover, injunctive relief was not appropriate, because ConAgra was effectively seeking to enjoin Zimmerman from committing a future crime. The record shows that ConAgra sent Zimmerman a "bar and ban" letter after the shooting, informing him that he was no longer permitted to enter onto its property. Thus, any subsequent entry by Zimmerman would constitute a criminal trespass.[11] It is well settled that equity, as a general rule, has no criminal jurisdiction.[12] Where acts complained of are in violation of the criminal law, courts of equity will not, on that ground alone, interfere by injunction

---

[7] See *Professional Firefighters Assn. v. City of Omaha*, 282 Neb. 200, 803 N.W.2d 17 (2011).

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] See Neb. Rev. Stat. § 28-521 (Cum. Supp. 2012).

[12] See, *Florida v. Seminole Tribe of Florida*, 181 F.3d 1237 (11th Cir. 1999); *U.S. v. Santee Sioux Tribe of Nebraska*, 135 F.3d 558 (8th Cir. 1998); *State ex rel. Meyer v. Weiner*, 190 Neb. 30, 205 N.W.2d 649 (1973); *State, ex rel. Spillman, v. Heldt*, 115 Neb. 435, 213 N.W. 578 (1927); *State v. Maltby*, 108 Neb. 578, 188 N.W. 175 (1922).

to prevent their commission, as they will not exercise their power for the purpose of enforcing criminal laws.[13] Since at least 1911, this court has recognized that equity will not interfere to punish crime.[14]

The majority circumvents these principles, claiming that ConAgra has no adequate remedy at law. But the prosecution of criminal offenses is normally a complete and sufficient remedy at law.[15] Thus, an injunction was not necessary to prevent a failure of justice, because any subsequent trespass would subject Zimmerman to criminal prosecution.

The majority fails to explain how this case differs from hundreds, if not thousands, of assaultive crimes perpetrated annually in Nebraska. I see no principled basis in the majority opinion to distinguish this case from other cases. Undoubtedly, this precedent will prompt employers of victims to routinely seek injunctive relief merely for the sake of appearing to do something. The majority's rationale for opening up the floodgates to such cases is that it does not "feel comfortable standing by idly when justice calls for action." Although aspirations of justice are noble, courts apply law and equity. The majority's discomfort strikes me as a poor basis for departing from the accumulated wisdom of over 100 years of precedent.

Ultimately, the majority permits ConAgra to obtain special treatment from the courts where the Legislature has declined to authorize it. I do not believe that ConAgra's status as a corporation or as a large and successful enterprise justifies the special treatment afforded by the majority's decision. Injunctive relief is an extraordinary remedy.[16] The Legislature has provided injunctive relief for victims of domestic abuse[17] or victims of harassment,[18] but ConAgra's status as a victim's

---

[13] See *Heldt, supra* note 12.

[14] See *State v. Chicago, B. & Q. R. Co.*, 88 Neb. 669, 130 N.W. 295 (1911).

[15] See *City of New York v. Andrews*, 186 Misc. 2d 533, 719 N.Y.S.2d 442 (2000).

[16] See *Bock v. Dalbey*, 283 Neb. 994, 815 N.W.2d 530 (2012).

[17] See Neb. Rev. Stat. § 42-924 (Cum. Supp. 2012).

[18] See Neb. Rev. Stat. § 28-311.09 (Cum. Supp. 2012).

employer clearly falls outside of the protections afforded by these statutes. This court has repeatedly emphasized that it is the Legislature's function to declare the public policy of this state.[19] And the court long ago recognized that equity will not enjoin the commission of a crime merely because the penalty seems to be inadequate, since the relief in such case must come from the Legislature.[20] As the court said at that time, "If the punishment provided is not sufficient, recourse should be had to the [L]egislature, and not to the equity side of the courts."[21] It is the Legislature's prerogative to determine whether the extraordinary remedy of injunctive relief should be extended in the way that ConAgra seeks. Instead of deferring to the Legislature's proper functioning, the majority's decision pre-empts the Legislature's role.

I respectfully dissent.

Stephan, J., joins in this dissent.

---

[19] See, e.g., *In re Invol. Dissolution of Wiles Bros.*, 285 Neb. 920, 830 N.W.2d 474 (2013); *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012); *Bassinger v. Nebraska Heart Hosp.*, 282 Neb. 835, 806 N.W.2d 395 (2011); *City of Falls City v. Nebraska Mun. Power Pool*, 281 Neb. 230, 795 N.W.2d 256 (2011); *Bamford v. Bamford, Inc.*, 279 Neb. 259, 777 N.W.2d 573 (2010); *R & D Properties v. Altech Constr. Co.*, 279 Neb. 74, 776 N.W.2d 493 (2009); *Wilke v. Woodhouse Ford*, 278 Neb. 800, 774 N.W.2d 370 (2009); *Davis v. Davis*, 275 Neb. 944, 750 N.W.2d 696 (2008).

[20] See *Maltby, supra* note 12.

[21] *Id.* at 584, 188 N.W. at 178.

---

Charles Rodgers, appellant, v.
Nebraska State Fair, appellee.
___ N.W.2d ___

Filed May 9, 2014.    No. S-13-651.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order,