Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/02/2018 09:13 AM CST

Summer Haven Lake Association, Inc., a Nebraska
corporation, appellee and cross-appellant,
v. Ronald G. Vlach, appellant and
cross-appellee, and Victory Lake
Marine, Inc., a Nebraska
corporation, appellee.

___ N.W.2d ___

Filed December 26, 2017.    No. A-16-638.

1. **Injunction: Equity: Appeal and Error.** An action for injunction sounds
   in equity. On appeal from an equity action, an appellate court tries fac-
   tual questions de novo on the record and, as to questions of both fact
   and law, is obligated to reach a conclusion independent of the conclu-
   sion reached by the trial court.
2. **Principal and Agent.** If an agent intends to bind his principal, the agent
   must not only name the principal, but must express by some form of
   words that the writing is the act of the principal.
3. **Contracts.** Extrinsic evidence is not permitted to explain the terms of a
   contract that is not ambiguous.
4. **Contracts: Intent.** When a contract is unambiguous, the intentions of
   the parties must be determined from the contract itself.
5. **Contracts: Parties: Intent.** The interpretation given to a contract by the
   parties themselves while engaged in the performance of it is one of the
   best indications of true intent and should be given great, if not control-
   ling, influence.
6. **Corporations.** A corporation will be looked upon as a legal entity as a
   general rule, and until sufficient reason to the contrary appears.
7. **Corporations: Equity: Fraud.** In equity, the corporate entity may be
   disregarded and held to be the mere alter ego of a shareholder or share-
   holders in various circumstances where necessary to prevent fraud or
   other injustice.
8. **Waters.** The State Boat Act, Neb. Rev. Stat. §§ 37-1201 through
   37-12,110 (Reissue 2016), was enacted to promote safety for persons

- 385 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
SUMMER HAVEN LAKE ASSN. v. VLACH
Cite as 25 Neb. App. 384

and property in and connected with the use, operation, and equipment of vessels and to promote uniformity of laws relating thereto.

9. ____. The State Boat Act applies to any waters within the territorial limits of Nebraska.

10. ____. The provisions of the State Boat Act and of other applicable laws govern the operation, equipment, numbering, and all other matters relating thereto whenever any vessel shall be operated on the waters of Nebraska or when any activity regulated by the State Boat Act shall take place.

11. **Waters: Administrative Law: Ordinances.** The State Boat Act permits the adoption of any ordinance or local law relating to operation and equipment of vessels so long as the provisions of which are and continue to be identical to the provisions of the State Boat Act or rules or regulations issued thereunder.

12. **Waters: Administrative Law.** The State Boat Act specifically authorizes the Game and Parks Commission to make special rules and regulations with reference to the operation of vessels on any specific water or waters within the territorial limits of Nebraska.

13. ____: ____. Pursuant to authority granted by the State Boat Act, the Game and Parks Commission prescribed certain boating regulations contained in the Nebraska Administrative Code, including special rules and regulations for nonpublic lake associations governing operation of vessels on waters administratively controlled by nonpublic lake associations.

14. **Waters: Administrative Law: Words and Phrases.** The Nebraska Administrative Code defines a nonpublic lake association as an organization of lakeside residents with administrative control over nonpublic waters of this state.

15. **Contracts: Public Policy.** Any contract which is clearly contrary to public policy is void.

16. **Contracts: Parties.** A party cannot, by contractual agreement with another party, obtain the power to do something that state law forbids.

17. **Waters: Administrative Law.** Any subdivision of this state may at any time make formal application to the Game and Parks Commission for special rules and regulations with reference to the operation of vessels on any waters within its territorial limits and shall set forth therein the reasons which make such special rules or regulations necessary or appropriate.

18. **Injunction.** An injunction is an extraordinary remedy, and it ordinarily should not be granted unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice.

- 386 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
SUMMER HAVEN LAKE ASSN. v. VLACH
Cite as 25 Neb. App. 384

19. **Injunction: Proof.** The party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle him or her to relief.

20. **Restrictive Covenants: Injunction.** A mandatory injunction is an appropriate remedy for a breach of a restrictive covenant.

21. **Appeal and Error.** To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.

22. **Attorney Fees.** Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees.

23. **Attorney Fees: Costs.** Customarily, attorney fees and costs are awarded only to prevailing parties, or assessed against those who file frivolous suits.

24. ____: ____. Neb. Rev. Stat. § 25-824(2) (Reissue 2016) permits a court in any civil action to award as part of its judgment and in addition to any other costs otherwise assessed reasonable attorney fees and court costs against any attorney or party who has brought or defended a civil action that alleges a claim or defense which a court determines is frivolous or made in bad faith.

25. **Actions: Attorney Fees: Words and Phrases.** The term "frivolous" connotes an improper motive or legal position so wholly without merit as to be ridiculous.

26. **Attorney Fees: Appeal and Error.** On appeal, a trial court's decision allowing or disallowing attorney fees for frivolous or bad faith litigation will be upheld in the absence of an abuse of discretion.

Appeal from the District Court for Dodge County: GEOFFREY C. HALL, Judge. Affirmed.

K.C. Engdahl for appellant.

Thomas B. Thomsen, of Sidner Law, for appellee Summer Haven Lake Association, Inc.

INBODY, PIRTLE, and RIEDMANN, Judges.

RIEDMANN, Judge.

INTRODUCTION

Ronald G. Vlach appeals and Summer Haven Lake Association, Inc. (Summer Haven), cross-appeals the order of

- 387 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SUMMER HAVEN LAKE ASSN. v. VLACH
Cite as 25 Neb. App. 384

the Dodge County District Court which granted an injunction enjoining Vlach from further violations of Summer Haven's rules and regulations and upheld a 120-day suspension of Vlach's lake privileges. Finding no merit to the issues raised on appeal or cross-appeal, we affirm.

## BACKGROUND

Vlach is the owner and sole shareholder of Victory Lake Marine, Inc. (Victory Lake). Summer Haven is a Nebraska corporation and is the owner of Summer Haven Lake and the real estate surrounding the lake. Persons interested in purchasing a cabin at Summer Haven Lake must commit to purchasing one share of Summer Haven common stock. Summer Haven's bylaws require that each shareholder enter into a shareholder agreement with Summer Haven. Accordingly, in June 2006, a shareholder agreement was executed between Summer Haven and Victory Lake/Vlach. The body of the agreement stated that it was being entered into between Summer Haven as the "Association" and Victory Lake as the "Shareholder." The signature page contained a line for Vlach to sign as shareholder and president of Victory Lake and a separate line for him to sign as shareholder only. The line reserved for the signature of the president of Victory Lake was left blank, and Vlach signed only the line marked "Shareholder." The shareholder agreement also contains an acknowledgment wherein the shareholder acknowledges receiving a copy of Summer Haven's rules and regulations and agrees to abide by them. Vlach again signed only the line marked for "Shareholder" and not the line designated for the signature of the president of Victory Lake.

Summer Haven's safety rules and regulations provide that all members and residents of Summer Haven Lake are responsible for ensuring that they and their guests follow the rules and the terms of the shareholder agreement. A violation of the rules is a ground for suspension of lake privileges for a period of up to 120 days. Relevant to this appeal, the rules

- 388 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SUMMER HAVEN LAKE ASSN. v. VLACH
Cite as 25 Neb. App. 384

provide that the maximum length for inboard and outboard boats is 18 feet 6 inches and that pontoon boats are restricted to operation on the lake between the hours of 8 p.m. and 10 a.m.

In August 2012, safety violations were reported against Vlach for having a boat longer than the maximum length at his "shore station" and operating a pontoon boat before 8 p.m. Vlach appealed the violations to Summer Haven's board of directors, which voted to reject the appeal and impose a 120-day suspension of lake privileges. Vlach then appealed the decision to the shareholders, and the shareholders voted at a May 2013 meeting to uphold the board's decision. Nevertheless, Vlach was observed operating a boat on the lake on at least three occasions in July 2013, and he ultimately admitted that he operated boats on the lake during the 120-day suspension period.

Accordingly, Summer Haven commenced this action in August 2013, requesting a temporary and permanent injunction restraining Vlach's use of the lake for a period of 120 days as a result of violating Summer Haven's rules and regulations and enjoining him from further violations. Vlach and Victory Lake filed an answer, counterclaim, and third-party complaint joining the individual members of Summer Haven's board of directors as third-party defendants. The relief requested in the counterclaim was limited to dismissal of the claims at Summer Haven's cost and reimbursement of attorney fees and costs expended in defending the action. In their third-party complaint, Vlach and Victory Lake alleged that Summer Haven lacked the authority to institute legal proceedings against them, and because the directors knew or should have known they were exceeding their authority, their actions constitute a breach of trust and fiduciary obligations. Summer Haven filed a motion to dismiss the counterclaim and third-party complaint, and after concluding that the counterclaim and third-party complaint failed to state a claim, the district court granted the motion to dismiss.

- 389 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SUMMER HAVEN LAKE ASSN. v. VLACH
Cite as 25 Neb. App. 384

Vlach and Victory Lake moved for summary judgment as to the allegations in the amended complaint, and thereafter, the parties agreed to bifurcate the legal issue of Summer Haven's authority to enact and enforce its own rules and regulations from the factual issue of whether Vlach and/or Victory Lake violated the rules. The district court determined that the shareholder agreement was executed by Vlach personally and as authorized representative of Victory Lake, and as such, both entities were bound by its terms. In addition, the court concluded that the State Boat Act, see Neb. Rev. Stat. §§ 37-1201 to 37-12,110 (Reissue 2016) (the Act), does not conflict with or govern the issues in the present case, and therefore, the shareholder agreement controls and is enforceable against the shareholders. The court deemed Summer Haven's rules and regulations to be restrictive covenants, which Summer Haven is entitled to enforce along with their associated penalties.

After holding a trial on the remaining factual issues, the district court incorporated its previous rulings on the legal issues into its order and concluded that the undisputed evidence established that Vlach violated Summer Haven's rules and regulations by operating a pontoon boat outside of the allowed hours and operating a boat that exceeded the maximum length restrictions. The court therefore granted the equitable relief sought by Summer Haven and enjoined Vlach from further violating Summer Haven's rules and regulations and upheld the 120-day suspension of Vlach's lake privileges. The district court ruled, however, that there was no evidence that Victory Lake violated the rules and regulations and dismissed all claims against it. The court subsequently granted Summer Haven's motion for attorney fees in the amount of $5,000. Vlach timely appeals, and Summer Haven cross-appeals.

## ASSIGNMENTS OF ERROR

Vlach assigns, restated and renumbered, that the trial court erred in (1) denying Vlach's motion for summary judgment,

- 390 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SUMMER HAVEN LAKE ASSN. v. VLACH
Cite as 25 Neb. App. 384

(2) determining that provisions of the Act did not control and govern, (3) finding that Vlach was bound by and had violated Summer Haven's rules and regulations, (4) finding in favor of Summer Haven with regard to its claims and granting an injunction, (5) dismissing Vlach's counterclaim and third-party complaint, and (6) awarding attorney fees in favor of Summer Haven.

On cross-appeal, Summer Haven assigns that the district court erred in dismissing the action against Victory Lake and failing to award attorney fees in the amount of $16,600.

## STANDARD OF REVIEW

[1] An action for injunction sounds in equity. On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court. *ConAgra Foods v. Zimmerman*, 288 Neb. 81, 846 N.W.2d 223 (2014).

## ANALYSIS

*Shareholder Agreement.*

We first address the claims with respect to the capacity in which the shareholder agreement was signed. The district court concluded that the shareholder agreement was executed by Vlach in his personal capacity and as representative of Victory Lake. Vlach argues that there was no evidence that he agreed to be personally bound by the agreement. No one contests the court's determination that Vlach executed the agreement as representative of Victory Lake; thus, we do not address this issue.

The issue before us with respect to the shareholder agreement in the present case is whether Vlach is personally bound to the obligations contained therein. We conclude that he is.

The agreement is the same agreement signed by other shareholders, except for the name of the proposed shareholder and the lot number. There are two separate lines reserved

- 391 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SUMMER HAVEN LAKE ASSN. v. VLACH
Cite as 25 Neb. App. 384

for the signature of the shareholder of Summer Haven. The top line is labeled "Shareholder" and is designated for the signature of Victory Lake by its president. The bottom line is labeled only as "Shareholder." It is apparent that the name of Victory Lake and the word "President" were typed into the standard shareholder agreement separately, because they are typed using a different font. Vlach elected to sign only on the bottom line, which was designated for shareholder but left blank the space designated for the signature of the president of Victory Lake.

[2] At the bottom of the shareholder agreement signature page appears an acknowledgment, wherein the shareholder of Summer Haven acknowledges having received a copy of Summer Haven's rules and regulations and agrees to abide by them. Underneath the acknowledgment appears a signature block which is identical to the spaces for the shareholder's signatures in the agreement. In other words, the acknowledgment also contains two lines designated for the signature(s) of the shareholder(s) of Summer Haven. Vlach again elected to sign only the bottom line reserved for the shareholder but not the top line reserved for the representative of Victory Lake. In so signing, Vlach agreed to bind himself personally to the terms of the agreement and the rules governing Summer Haven. See *780 L.L.C. v. DiPrima*, 9 Neb. App. 333, 611 N.W.2d 637 (2000) (explaining that if agent intends to bind his principal, agent must not only name principal, but must express by some form of words that writing is act of principal). Where, as here, two signature lines were available, one in which Vlach could have signed in a representative capacity, and another in which he could sign in his individual capacity, and he chose to sign the latter, he is bound individually.

[3,4] Vlach argues that testimony contained in his deposition and affidavit offered into evidence at the summary judgment hearing establish that he did not intend to bind himself personally, but, rather, he only intended to enter into

- 392 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
SUMMER HAVEN LAKE ASSN. v. VLACH
Cite as 25 Neb. App. 384

the shareholder agreement as representative of Victory Lake. However, neither party contends that the shareholder agreement is ambiguous, and extrinsic evidence is not permitted to explain the terms of a contract that is not ambiguous. See *Facilities Cost Mgmt. Group v. Otoe Cty. Sch. Dist.*, 291 Neb. 642, 868 N.W.2d 67 (2015). When a contract is unambiguous, the intentions of the parties must be determined from the contract itself. *Id*. Because no one contends that the shareholder agreement is ambiguous, nor do we find it to be ambiguous, we do not consider parol evidence such as Vlach's deposition or affidavit to determine the meaning of the contract.

[5] The Nebraska Supreme Court has stated that the interpretation given to a contract by the parties themselves while engaged in the performance of it is one of the best indications of true intent and should be given great, if not controlling, influence. See *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014). Here, Vlach resided at Summer Haven Lake and served on Summer Haven's board of directors. The bylaws specifically provide that the board is to be composed of shareholders. There is no indication that Vlach served on the board in his representative capacity as president of Victory Lake or that his residency there was in any way tied to his corporate position.

After reviewing the evidence, we find no error in the court's conclusion that Vlach executed the shareholder agreement in his individual capacity. Accordingly, we find no merit to Vlach's argument that evidence was lacking to support the district court's decision that he personally bound himself to the terms and conditions of the shareholder agreement.

Concluding that Vlach was personally bound under the shareholder agreement, the district court denied Vlach's motion for summary judgment, finding that material issues of fact remained which could not be resolved by summary judgment. Vlach does not challenge this conclusion on appeal; rather, his argument is based on his claim that he was not personally bound under the shareholder agreement. Having rejected that

- 393 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
SUMMER HAVEN LAKE ASSN. v. VLACH
Cite as 25 Neb. App. 384

argument, we affirm the denial of Vlach's motion for summary judgment.

On cross-appeal, Summer Haven contends that the district court erred in dismissing the claims against Victory Lake, because Victory Lake and Vlach were one and the same. In its amended complaint, Summer Haven alleged that Victory Lake was the alter ego of Vlach and that Vlach used Victory Lake "merely as an instrumentality in conducting his own personal business." Thus, Summer Haven asserts that the claims against the corporation should not have been dismissed. We do not agree.

[6,7] Victory Lake is a Nebraska corporation, and a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears. See *Medlock v. Medlock*, 263 Neb. 666, 642 N.W.2d 113 (2002). However, in equity, the corporate entity may be disregarded and held to be the mere alter ego of a shareholder or shareholders in various circumstances where necessary to prevent fraud or other injustice. *Id*. Among the factors which are relevant in determining to disregard the corporate entity are diversion by the shareholder or shareholders of corporate funds or assets to their own or improper uses and the fact that the corporation is a mere facade for the personal dealings of the shareholder and that the operations of the corporation are carried on by the shareholder in disregard of the corporate entity. *Id*.

There was no evidence presented in the case at hand to establish that Victory Lake was a mere alter ego of Vlach. There was also no evidence presented that Vlach violated the rules and regulations violations while acting in his capacity as president of Victory Lake. Summer Haven's assigned error as to the dismissal of the claims against Victory Lake is based solely upon its position that Victory Lake is the alter ego of Vlach. Having rejected this argument, we affirm the district court's decision dismissing the claims against Victory Lake.

- 394 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SUMMER HAVEN LAKE ASSN. v. VLACH
Cite as 25 Neb. App. 384

*State Boat Act.*

Vlach next argues that Summer Haven lacked the authority to enact and enforce its own rules and regulations, because the Act controls and governs conduct on the lake. We agree that the Act controls and governs Summer Haven Lake; however, we conclude that Summer Haven has the authority to enact and enforce its own administrative rules and regulations provided they do not conflict with the Act or provisions of the Nebraska Administrative Code enacted by the Game and Parks Commission.

[8,9] The Act was enacted to promote safety for persons and property in and connected with the use, operation, and equipment of vessels and to promote uniformity of laws relating thereto. § 37-1201. The Act applies to any waters within the territorial limits of Nebraska. § 37-1206.

[10,11] The provisions of the Act and of other applicable laws govern the operation, equipment, numbering, and all other matters relating thereto whenever any vessel shall be operated on the waters of Nebraska or when any activity regulated by the Act shall take place thereon. § 37-1264. The Act permits the adoption of any ordinance or local law relating to operation and equipment of vessels so long as the provisions of which are and continue to be identical to the provisions of the Act or rules or regulations issued thereunder. § 37-1264.

[12-14] In addition to this restriction, the Act specifically authorizes the Game and Parks Commission to make special rules and regulations with reference to the operation of vessels on any specific water or waters within the territorial limits of Nebraska. See § 37-1266. Pursuant to this authority, the Game and Parks Commission prescribed certain boating regulations contained in title 163, chapter 3, of the Nebraska Administrative Code. Among these regulations are special rules and regulations for nonpublic lake associations. See 163 Neb. Admin. Code, ch. 3, § 015 (2006). These special rules and regulations govern operation of vessels, including water-skiing and other related activities, on waters administratively

- 395 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SUMMER HAVEN LAKE ASSN. v. VLACH
Cite as 25 Neb. App. 384

controlled by nonpublic lake associations. 163 Neb. Admin. Code, ch. 3, § 015.01 (2006). A nonpublic lake association is defined as an organization of lakeside residents with administrative control over nonpublic waters of this state. § 015.01A1. Included in the rules for nonpublic lake associations are specific rules prescribed for Summer Haven Lake. See 163 Neb. Admin. Code, ch. 3, § 015.020 (2006). There are separate rules which govern operation of vessels on waters administratively controlled by subdivisions of this state. See 163 Neb. Admin. Code, ch. 3, § 016 (2004).

[15,16] Stated another way, the Act grants the Game and Parks Commission the authority to enact special rules and regulations governing boating. Pursuant to this authority, the Game and Parks Commission prescribed rules governing entities such as Summer Haven Lake, which it recognized are administratively controlled by their lakeside residents. In other words, the Game and Parks Commission recognizes that the shareholders of Summer Haven have administrative control over their lake. Therefore, the shareholders have the authority to enact and enforce their own rules and regulations, provided the rules do not conflict with the terms of the Act or the Nebraska Administrative Code. And because neither the Act nor the Game and Parks Commission's rules and regulations addresses hours of operation for pontoon boats or boat size, Summer Haven's rules and regulations do not conflict. Therefore, Summer Haven is not prohibited from requiring that its shareholders abide by additional rules and regulations so long as the rules and regulations do not violate public policy or conflict with state law. See, *Devney v. Devney*, 295 Neb. 15, 886 N.W.2d 61 (2016) (any contract which is clearly contrary to public policy is void); *Rath v. City of Sutton*, 267 Neb. 265, 673 N.W.2d 869 (2004) (party cannot, by contractual agreement with another party, obtain power to do something that state law forbids).

Vlach argues that not only may Summer Haven's rules and regulations not conflict with the Act, they must be identical

- 396 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
SUMMER HAVEN LAKE ASSN. v. VLACH
Cite as 25 Neb. App. 384

to the provisions of the Act. We agree that the Act requires that any ordinance or local law adopted under the Act be identical to the provisions of the Act or rules or regulations issued thereunder. See § 37-1264. However, Summer Haven's rules are not ordinances or local laws, and they therefore do not fall under this requirement.

[17] Vlach also argues that in order to enact its own rules, Summer Haven was first required to obtain permission from the Game and Parks Commission. But the Act requires only such permission from subdivisions of the state. Any subdivision of this state may at any time make formal application to the Game and Parks Commission for special rules and regulations with reference to the operation of vessels on any waters within its territorial limits and shall set forth therein the reasons which make such special rules or regulations necessary or appropriate. § 37-1265. Under the boating regulations of the Nebraska Administrative Code, however, Summer Haven is not a subdivision of the state but is a nonpublic lake association. In addition, the Nebraska Administrative Code recognizes that lake associations, such as Summer Haven, have administrative control over their own waters. As such, Summer Haven was not required to obtain permission before enacting its own rules. We therefore find that Summer Haven has the authority to enact and enforce its own administrative rules governing conduct on its lake.

*Rules Violations.*

Vlach contends that the district court erred in determining that he violated Summer Haven's rules and regulations. And he claims that because evidence of any rules violations was lacking, the extraordinary remedy of issuing an injunction was erroneous. We find no merit to these arguments.

In an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of

- 397 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SUMMER HAVEN LAKE ASSN. v. VLACH
Cite as 25 Neb. App. 384

the conclusion reached by the trial court. *ConAgra Foods v. Zimmerman*, 288 Neb. 81, 846 N.W.2d 223 (2014).

In his deposition, Vlach admitted that on or around August 6, 2012, he operated a pontoon boat on Summer Haven Lake before 8 p.m. In addition, the president of the Summer Haven board of directors at the time of the violations testified that at a board of directors' meeting on August 6, Vlach acknowledged that he committed the violations he was charged with committing—operating a pontoon boat before 8 p.m. and having a boat that exceeded the maximum size limitation at his shore station. Moreover, meeting minutes from a board of directors' meeting held September 23 indicate that Vlach self-reported the violation of hours of operating a pontoon boat. Accordingly, we hold that the evidence was sufficient to conclude that Vlach committed the violations with which he was charged. Although we note that the court's order of April 22, 2016, states that "Vlach operated a motor boat on the lake which exceeded the length restrictions of the Rules and Regulations," it is clear from the record that the charged violation was for having a boat that exceeded the size limitation in Vlach's shore station. We find no prejudicial error in the court's statement because either scenario is a violation of Summer Haven's rules.

[18-20] The question then becomes whether an injunction was the proper remedy. An injunction is an extraordinary remedy, and it ordinarily should not be granted unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice. *ConAgra Foods v. Zimmerman, supra*. The party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle him or her to relief. *Id*. A mandatory injunction is an appropriate remedy for a breach of a restrictive covenant. *Beaver Lake Assn. v. Sorensen*, 231 Neb. 75, 434 N.W.2d 703 (1989).

Vlach argues that the extraordinary remedy of an injunction was not warranted by the facts of the case because the

- 398 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SUMMER HAVEN LAKE ASSN. v. VLACH
Cite as 25 Neb. App. 384

record does not support a finding that he was personally bound by Summer Haven's rules or that he violated the rules. Having rejected those arguments, we conclude that entering an injunction enjoining Vlach from further violations of Summer Haven's rules was not in error. Not only did the evidence support a finding that Vlach violated the rules in August 2012, but the undisputed evidence establishes that he continued to operate a boat during the 120-day suspension period imposed by Summer Haven's board of directors. And when initially confronted with his violations, Vlach's defense was his belief that Summer Haven lacked the authority to enact and enforce its rules. Thus, Summer Haven was left with little choice other than legal proceedings to force Vlach's compliance with its rules. Accordingly, we conclude that the district court did not err in granting Summer Haven's requested relief in the form of an injunction.

*Vlach's Counterclaim and*
*Third-Party Complaint.*

Vlach asserts that the district court erred in dismissing his counterclaim and third-party complaint. We disagree.

We first observe that Vlach notes the "irregular proceedings" in which the motion to dismiss was granted. Brief for appellant at 45. The district court initially denied the motion to dismiss from the bench and in a subsequent written order dated February 18, 2015. Thereafter, the court held a hearing on a pending motion for summary judgment, and in its order denying summary judgment dated July 31, 2015, the court reversed its previous decision and granted Summer Haven's motion to dismiss the counterclaim and third-party complaint, ruling that the complaint failed to state a claim for relief. Although Vlach does not specifically challenge the court's authority to reverse its ruling on its own motion, we recognize that the court does have the power to do so. See, *Fitzgerald v. Fitzgerald*, 286 Neb. 96, 835 N.W.2d 44 (2013) (in civil cases, court of general jurisdiction has inherent

- 399 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SUMMER HAVEN LAKE ASSN. v. VLACH
Cite as 25 Neb. App. 384

power to vacate or modify its own judgment at any time during term in which court issued it); *Frerichs v. Nebraska Harvestore Sys.*, 226 Neb. 220, 410 N.W.2d 487 (1987) (no abuse of discretion in trial court acting sua sponte to correct earlier order which court determined was conclusively shown to be incorrect).

[21] The question then becomes whether the district court erred in granting the motion to dismiss. Vlach argues that he should have been permitted to join the individual directors as third-party defendants because they knew or should have known that the institution of legal proceedings against Vlach and Victory Lake exceeded their corporate authority and permitting commencement of the suit constituted a breach of trust and fiduciary obligations owed by the directors to the shareholders. As we determined above, however, the decision to grant Summer Haven's request for injunction and enjoin Vlach from further violations of Summer Haven's rules as well as upholding the 120-day suspension is supported by the evidence. We therefore reject Vlach's claim that the directors breached the duty owed to the shareholders by commencing the present action. We note that Vlach does not specifically argue it was error to dismiss his counterclaim, and we therefore do not address that issue. See *Mock v. Neumeister*, 296 Neb. 376, 892 N.W.2d 569 (2017) (to be considered by appellate court, error must be both specifically assigned and specifically argued in brief of party asserting error). Consequently, we conclude that the district court did not err in dismissing Vlach's counterclaim and third-party complaint.

*Attorney Fees Award.*

Finally, Vlach asserts that the district court erred in awarding attorney fees to Summer Haven, and on cross-appeal, Summer Haven contends that the fees award should have been $16,600 rather than $5,000. We find no abuse of discretion in the fees awarded.

- 400 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SUMMER HAVEN LAKE ASSN. v. VLACH
Cite as 25 Neb. App. 384

[22,23] Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *SBC v. Cutler*, 23 Neb. App. 939, 879 N.W.2d 45 (2016). Customarily, attorney fees and costs are awarded only to prevailing parties, or assessed against those who file frivolous suits. *Id*.

[24] Here, Summer Haven based its request for attorney fees on Neb. Rev. Stat. § 25-824(2) (Reissue 2016), which provides:

> Except as provided in subsections (5) and (6) of this section, in any civil action commenced or appealed in any court of record in this state, the court shall award as part of its judgment and in addition to any other costs otherwise assessed reasonable attorney's fees and court costs against any attorney or party who has brought or defended a civil action that alleges a claim or defense which a court determines is frivolous or made in bad faith.

Summer Haven's motion for attorney fees specifically alleged that an attorney fees award was appropriate because Vlach's defense was frivolous and because his refusal to admit certain matters in his deposition and discovery responses necessitated proof of such matters.

[25,26] The term "frivolous" connotes an improper motive or legal position so wholly without merit as to be ridiculous. *SBC v. Cutler, supra*. On appeal, a trial court's decision allowing or disallowing attorney fees for frivolous or bad faith litigation will be upheld in the absence of an abuse of discretion. *Id*.

At the hearing on the request for attorney fees, Summer Haven's counsel testified that although he did not believe Vlach's defense regarding the Act was frivolous, the numerous motions filed by Vlach as well as his attempt to institute a counterclaim and third-party complaint were frivolous. Counsel's position was therefore that Vlach should be required to reimburse Summer Haven for time spent and fees incurred

- 401 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
SUMMER HAVEN LAKE ASSN. v. VLACH
Cite as 25 Neb. App. 384

for the matters that were frivolous in nature. Counsel then testified that he spent 56.4 hours on frivolous matters and that the rate charged to Summer Haven was $200 per hour. Counsel acknowledged, however, that he entered into an agreement with Summer Haven to represent it in this matter for a total sum of $5,000.

On appeal, Vlach argues that his defense to Summer Haven's action was not frivolous. And despite Summer Haven's counsel's concession at the attorney fees hearing, on appeal, Summer Haven asserts that not only was the defense frivolous, but a fees award is appropriate because of the vexatious manner in which the case was defended.

Based on the record before us, we cannot find that the attorney fees award constitutes an abuse of discretion. Summer Haven's counsel admitted that Vlach's defense based on the Act was not frivolous; thus, attorney fees on those grounds would be unwarranted. Summer Haven's counsel testified that he expended time valued at approximately $11,280 on matters he considered frivolous and unrelated to the allegations in the complaint requesting an injunction for Vlach's violations of Summer Haven's rules and regulations. These included responding to multiple motions to dismiss and the counterclaim and third-party complaint. Despite the total sum to which counsel testified, the court elected to order the payment of only $5,000. The court did not set forth the basis upon which it calculated this amount. Although the award is equal to the amount of fees agreed upon by Summer Haven and its counsel, it would be speculation on our part to conclude that the court found it was limited by that agreement. Based upon the evidence presented and the concession that Vlach's defense was in part not frivolous, we find no abuse of discretion in the award of $5,000 for attorney fees.

## CONCLUSION

We conclude that Summer Haven has the authority to enact its own rules and regulations governing conduct on Summer

- 402 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
SUMMER HAVEN LAKE ASSN. v. VLACH
Cite as 25 Neb. App. 384

Haven Lake provided that such rules do not conflict with the Act or regulations issued thereunder. We also conclude that Vlach personally bound himself under the shareholder agreement and that therefore, he was subject to enforcement of Summer Haven's rules. The evidence was sufficient to establish that he violated those rules and that an injunction was an appropriate remedy. Because the evidence does not support a finding that Vlach violated the rules and regulations in his capacity as president of Victory Lake, the claims against it were properly dismissed. Finally, we find no abuse of discretion in the amount of attorney fees awarded to Summer Haven. As a result, we affirm the order of the district court.

Affirmed.